## KENTUCKY *v.* POWERS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF KENTUCKY.

## *Ex parte* COMMONWEALTH OF KENTUCKY,.
### PETITIONER.

PETITION FOR WRIT OF MANDAMUS.

No. 393, Submitted; No. 15, Original, Argued, January 22, 1906.—Decided March 12, 1906.

Subordinate judicial tribunals of the United States can exercise only such jurisdiction as may be authorized by acts of Congress and whatever the nature of a civil suit or criminal proceeding in a state court it cannot be removed to the Federal court unless warrant therefor be found in some act of Congress.

Under §§ 641, 642, Rev. Stat., there is no right of removal into the Circuit Court of the trial of a person indicted under the state law where the alleged discrimination against the accused in respect to his equal rights, is due merely to illegal or corrupt acts of administrative officers unauthorized by the constitution or laws of the State as interpreted by its highest court. The remedy for wrongs of- that character is in the

1

state court, and ultimately in this court by writ of error to protect any right secured or granted to the accused by the Constitution or laws of the United States and which has been denied to him in the highest court of the State in which the decision in respect to that right can be had.

The fact that the courts of the State have on previous trials refused to recognize the validity of an alleged pardon given to the accused by the acting Governor of the State does not make a case under § 641, Rev. Stat., for the removal of the prosecution from the state court into the Circuit Court.

While the prior decisions of this court determining the scope of § 641, Rev. Stat., had reference to discrimination against negroes because of their race, the rules announced equally apply where it exists as to the white race; § 641 as well as the Fourteenth Amendment is for the benefit of all of either race whose cases are embraced by its provisions and not alone for the benefit of the African race.

Where the highest court of the State has declared that the action of the trial court in refusing to quash the indictment or the panel of petit jurors cannot under the laws of the State be reviewed by any appellate court, although the motion to quash was based on Federal grounds, then after the highest appellate court of the State has disposed of the matters of which it may take cognizance, a writ of error will run from this court to the highest court in the State in which the decision of the Federal question may be had; and upon such writ of error this court can review the judgment of the trial court, and will exercise such jurisdiction as may be necessary to vindicate any Federal right, privilege or immunity specially set up and denied.

Where this court holds that a case cannot be removed under § 641 from the state court into the Circuit Court it will not pass upon the merits of any Federal question which may arise in the case.

THESE cases arise out of a criminal prosecution begun in one of the courts of Kentucky and, after several trials, removed on the petition of the accused, Caleb Powers, into the Circuit Court of the United States for the Eastern District of Kentucky.

The principal question to be determined is whether the prosecution was removable from the state court.

After referring to the indictment and to the transfer of the prosecution into the Circuit Court of the United States, the petition for removal alleged that the accused was within the jurisdiction of the United States and of the Commonwealth of Kentucky; that he was and all of his life had been a citizen of the United States, and of that Commonwealth; and as such citizen was entitled to enforce in the judicial tribunals of Kentucky,

on the trial and final disposition of said prosecution, all equal civil rights and equal protection of laws secured to him by the provision of the Fourteenth Amendment that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." He also claimed the rights secured by section 1977 of the Revised Statutes of the United States, providing, "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other;" as well as those secured by the act of Congress of March 1, 1875, 18 Stat. 335, the preamble of which declares that: "Whereas, it is essential to just government we recognize the equality of all men before the law, and hold that it is the duty of government in its dealings with the people to mete out equal and exact justice to all, of whatever nativity, race, color, or persuasion, religious or political; and it being the appropriate object of legislation to enact great fundamental principles into law."

The petition then refers to the arrest of the accused on the ninth of March, 1900, upon the charge of being an accessory before the fact to the willful murder of William Goebel, and alleges that on the tenth of March, 1900, and prior to the finding and reporting of the indictment against the accused, "William S. Taylor, who was then the duly and legally elected, qualified, actual and acting Governor of the State of Kentucky, and had in his actual possession and under his actual control the office and executive mansion prepared by said State for its Governor, and all the books, papers, records, and archives belonging thereto, in due form of law duly and legally granted and de-

livered to your petitioner, and your petitioner accepted from him, a full, complete, absolute and unconditional pardon, release, and acquittance of the identical charge against him in said indictment, and the charge now pending in said prosecution against your petitioner in said Scott Circuit Court and under which your petitioner is now in custody; that said Taylor at the time he granted said pardon had the right and authority, under the constitution and laws of Kentucky, to grant same; that your petitioner accepted said pardon, and from the time same was granted he had claimed, and he now claims, the full benefit and effect thereof and his liberty thereunder. That on the day said pardon was granted him it was, by said Taylor as Governor aforesaid, duly entered on the executive journal kept in his office, and a certificate thereof was duly and in due form of law and as required by law, issued and delivered to him, duly executed by said Governor and the Secretary of said State, and placed in your petitioner's possession, and same was by your petitioner accepted. Your petitioner further states that at the time the said pardon was granted to him by his Excellency, the said William S. Taylor and subsequent thereto, the said William S. Taylor was, and prior thereto he had been, recognized, regarded, and treated as the duly elected, actual and acting Governor of the State of Kentucky by the Executive power and Executive Departments of the United States Government, including the President, the Attorney General and the Postmaster General, and by the postmaster at Frankfort, Kentucky;" that "for said State to hold him in custody, or to try or to require him to be tried in any one of its courts for the offense alleged against him in and by said indictment, since the granting and acceptance of said pardon and the issuance and acceptance of the certificate thereof, is a denial to him of the equal protection of the laws and the equal civil rights to which he is entitled under and as provided for in and by the portions of said Amendment to the Constitution of the United States above copied, and by said section of said Revised Statutes, and by said act of Congress;" and, that "notwithstanding the granting and ac-

ceptance of said pardon, the issuance and acceptance of said certificate, the fact that. the said William S. Taylor was the Governor of Kentucky when said pardon was granted and when said certificate was issued, and was then recognized as such Governor by said executive officers of the United States, that he cannot enforce in the said Scott Circuit Court in which said prosecution is pending, or in that part of the State in which said Scott County is located, or in any court, judicial tribunal or place of the said State, the equal civil rights and the equal protection of the laws secured to him by each and all of the three portions of said Amendment copied above, and by said section of the Revised Statutes of the United States and by said act of Congress for the reasons now set forth."

The accused here refers to the three trials to which he was subjected, and after stating that he was confined in the county jail, without bail, and awaiting trial, proceeds in his petition: "That at each of said trials your petitioner presented to said Scott Circuit Court said certificate of pardon, and pleaded and offered in evidence said pardon and said certificate as a bar and complete defense to said prosecution and the trial and conviction of your petitioner under said indictment, but at each of said trials the said trial court overruled said pleas and refused to admit said pardon and certificate as evidence, and held and adjudged that said pardon and certificate were null and void and of no effect whatever, and in each of said trials the said holding of the trial court in reference to said pardon and certificate was duly excepted to and made one of the grounds which was presented and on which a reversal was asked by said Court of Appeals on the trial of each one of said appeals heretofore mentioned, and on each one of said appeals your petitioner contended that said pardon and certificate entitled him to an acquittal of the charge contained in said indictment, but the said Court of Appeals on the trial and final disposition of each one of said appeals failed and refused to hold that said pardon and certificate authorized your petitioner's acquittance of said charge; instead, that court, as the said trial court had

done, held that said pardon and certificate were and are null
and void and of no effect whatever. The holding of said Court
of Appeals on the trial of each of said appeals was reduced to
writing, and each holding as prepared and ordered by said
Court of Appeals has been, by the official reporter of that court,
under the court's direction, caused to be printed in, and is now
a part of, the official printed reports of said court, and all of
said holdings are now in full force and effect as, and they in fact
are, the laws of said State in this case, and are binding upon
and will have to control this honorable court. That the in-
stances named are the only instances in which said Court of
Appeals or any trial court of said State ever held any pardon
and certificate thereof, granted, entered and issued by any Gov-
ernor of Kentucky, to be void and of no effect. That in con-
sequence of the action and holdings of said trial court and said
Court of Appeals above stated, this honorable court cannot,
and, should this case be retried in this honorable court, could not
allow your petitioner to plead or introduce said pardon and cer-
tificate as evidence as a defense to the said charges contained
in said indictment against him, and could not allow your peti-
tioner his liberty and acquittal under and by virtue of said
pardon and certificate, or allow said pardon and certificate to
have any effect whatever in your petitioner's behalf, but in-
stead is and will be bound in consequence of said laws to hold
said pardon and certificate null and void and of no effect what-
ever."

In the second paragraph of his petition for removal the ac-
cused states that he is a citizen of the United States and of
Kentucky, and as such is entitled to enforce in the judicial tri-
bunals of the State the equal civil rights and the equal protec-
tion of the law secured to him by the above constitutional pro-
visions and statutes.

His petition then alleges: "But your petitioner states that
he is denied and cannot enforce in the judicial tribunals of this
State and in the part of the State where this action is pending,
the rights secured to him by said laws and each of said laws,

because the said State of Kentucky has enacted a law which has not been repealed nor abrogated, and which is now in full force. and effect, to wit, section 281 of the Criminal Code of Practice of said State, which section reads as follows: 'The decisions of the court upon challenges to the panel and for cause, upon motions to set aside an indictment, and upon motions for a new trial, shall not be subject to exception;' and because of the decisions of the Court of Appeals of Kentucky, the highest judicial tribunal in this State, rendered in this action . . . upholding the validity of said law, notwithstanding its plain contravention of the said provisions of the Constitution of the United States.

\*    \*    \*    \*    \*    \*    \*    \*

"Your petitioner states that the death of said Goebel occurred during the existence of intense political excitement following the election of a Governor and other state officers in November, 1899; that said Goebel had been the Democratic candidate for the office of Governor, and was. at the time of his death contesting the right of said William S. Taylor to the office of Governor, said Taylor who was a Republican candidate for that office, having been actually elected Governor and declared elected Governor by the duly and legally constituted authorities, and inducted into said office; that this petitioner was at said election the Republican candidate for the office of Secretary of State, and had been actually elected and declared elected to said office, and had been inducted into said office; and there was pending at the time of said Goebel's death a contest for the said office of Secretary of State, against this defendant, inaugurated by one C. B. Hill, who had been a Democratic candidate for said office; that the public mind was, by said election and said contest for the office of Governor, Lieutenant Governor, Secretary of State, and the other state offices greatly inflamed, and bitter and intense political animosities were excited and fostered by reason thereof, and that such feelings existed at all of the trials of this petitioner hereinafter referred to, and such feelings still exist against him on the part of said

adherents of said Goebel throughout the State of Kentucky, and particularly in Scott County.

"Your petitioner further states that he was first put on trial under said charge on the 9th day of July, 1900, at a special term of the Scott Circuit Court, begun and holden on said date; that said trial resulted in a verdict of conviction, and he was sentenced to confinement in the state penitentiary during his natural life; that the jury in said trial was selected from a large number of the citizens of said county, and that with three or four exceptions all of the veniremen were purposely summoned because of their known party affiliations, which were different from the known party affiliations of your petitioner; that by the laws of Kentucky in such cases made and provided the prosecution has a right to five, and the defense to fifteen, peremptory challenges, and that with the exception of three or four Republicans and Independent Democrats all of those summoned were known to be partisan Goebel Democrats while your petitioner was and is a Republican and was known to belong to the Republican Party; that from veniremen so summoned a trial jury was selected that was composed almost if not entirely, of Goebel Democrats, and no Republicans, although there were then residing in said county many hundreds of citizens qualified for jury service who were Republicans and Independent Democrats and not supporters of said Goebel in his candidacy or contest for the office of Governor of Kentucky, nor in sympathy with him; but your petitioner avers and charges that all of such citizens, with the exceptions named, were intentionally passed by in summoning said veniremen, in order that your petitioner should not have a fair trial by a jury of his peers impartially selected, but to the end that such jury might be selected to convict him.

"Your petitioner further respectfully represents that the sheriff of Scott County to whom is assigned the duty of selecting all jurors whose names are not drawn from the jury wheel is a Goebel Democrat, as are also the deputy sheriffs of said county.

"Your petitioner further states that at said first trial hereinbefore mentioned the judge of the Scott Circuit Court, when the original list of names drawn from the jury wheel for jury service had been exhausted, although requested by counsel for this petitioner, and while there remained in said jury wheel about one hundred names, to draw the names remaining in said jury wheel therefrom, refused to do so, but directed the sheriff to summon one hundred men for jury service and explicitly directed him to summon no men for jury service from the city of Georgetown, but to go out into county for that purpose. Your petitioner states that the said one hundred names that remained at said time in said jury wheel had been placed there by impartial and unbiased jury commissioners prior to the election in November, 1899, and prior to the killing of said Goebel. Your petitioner states that on the morning following the order of the court to the sheriff to summon the one hundred men for jury service from the county and when said one hundred men so summoned had appeared in court they were seated on one side of the court room separate and apart from the spectators and other persons; that the judge of said court, without notice to your petitioner or any of his counsel, and without making any request of any of his counsel or of this petitioner to accompany him, left the bench and went to the side of the court room wherein said parties summoned for jury service were assembled, and without swearing said parties, so far as this petitioner saw, heard or has information, as to their excuses for not serving as jurors if any they had, called them up to him one at a time, not in the hearing of this petitioner, or his counsel, and excused such of them from jury service as he saw fit, without any knowledge on the part of this petitioner or his counsel as to why such parties were thus excused, and on the following day the same proceeding was had as to forty additional men that had been summoned for jury service in this case.

"Your petitioner further states that an appeal was taken from the judgment of said court to the Kentucky Court of Appeals, and that at the January term, 1901. of said court the

judgment of the trial court was reversed; that your petitioner was again tried in the Scott Circuit Court at its October, 1901, term, and a verdict of guilty returned again, fixing the punishment of your petitioner at confinement in the state penitentiary for life; that in summoning the veniremen from whom the jury was selected at the second trial the same unjust and unlawful discrimination was practised, and that of one hundred and twenty-five veniremen summoned in Scott County, all were partisan Goebel Democrats except three, and of one hundred and sixty-eight veniremen summoned in the adjoining county of Bourbon, all were partisan Democrats except three, so that of the aggregate of two hundred and ninety summoned, two hundred and eighty-four were Goebel Democrats and six were Republicans, notwithstanding the fact that there were many hundreds of citizens in each of said counties qualified for jury service who were Republicans or Independent Democrats, and not Goebel partisans.

"Your petitioner states that at said second trial he objected to the formation of a jury from the veniremen summoned as hereinabove stated, and moved to discharge the entire venire on the ground that he could not obtain a fair trial before a jury selected therefrom and filed in support of said objection an affidavit."

The affidavit referred to is given in full in the margin.[1]

---

[1] The affiant states that he ought not to be required to go to trial before a jury drawn as a panel for service at the present term of this court or already summoned from the county of Bourbon for the following reasons, namely: that the political canvass in this State in 1899, in which the late William Goebel was candidate for the office of Governor, was a heated and angry one, and tended to create great antagonism in the minds of his political adherents against those who opposed; that this canvass was followed by a contest before the state legislature for said office, in which the deepest and fiercest passions were stirred in the minds of his followers in this county, as well as in other counties of the State, including the county of Bourbon; that during that contest the said Goebel was killed, which killing tended still further to deepen and intensify the political passions of his friends and admirers in this county and in the county of Bourbon and throughout the State, against this affiant, who was a candidate for a state office on the Republican ticket in the said year of 1900. The passions thus created have

The . petition then proceeds: "Your petitioner states that although the statements in said affidavit were true and known to be true by the court he was forced to submit to trial before a jury composed entirely of Goebel Democrats, your petitioner

since that time been stimulated and fed by the political contests which have since followed, and are still in existence, in this county and Bourbon County. Affiant says that, at a special term of this court in July, 1900, he was put on trial in this county, charged with being an accessory before the fact to the killing of said William Goebel, and was by the jury found guilty. From the judgment of the court at that term, the affiant appealed to the Appellate Court, the appeal being taken in the early part of September in said year; that at the subsequent October term of said court, jury commissioners for this county were selected whose duty it was to select a large number of names and place them in the jury wheel for service during the year 1901.

The three commissioners appointed were John Bradford, Ben Mallory and H. H. Haggard, all three of whom were partisan supporters and allies, in the contest referred to, of the said William Goebel, deceased. The said jury commissioners discharged the work assigned to them by placing in said jury wheel the names of two hundred citizens of Scott County for purposes of said jury service; that at the February term, 1901, of the Circuit Court of this county and at the May term of the said year, seventy-five or more names were drawn from the jury wheel for said service; that at the present term there were drawn from the said jury wheel for the purpose of securing a jury in this case about one hundred and twenty-five names, that being the entire number of names placed in the wheel. Affiant further states that at the regular state election of 1900, in the county of Scott, there were cast for the Democratic candidate, in round numbers, 2,500 votes, and for the Republican candidate 2,100 votes; that of these 2,100 votes not less than 1,300 were white voters of equal character, standing and intelligence with the white voters who cast their votes for the Democratic party at said election.

Affiant says that, despite these conditions, which were shown to exist in this county, that of the 200 names placed in the jury wheel by the aforesaid commissioners and drawn out as herein described, only five were supporters of the Republican party, and the other 195 being active partisan friends and supporters of the party with which William Goebel was identified as its leader and whose minds and passions had.been inflamed against this affiant by continued political agitation.

The affiant further says that of the five Republicans whose names were placed in the jury wheel for jury service by said commissioners, as before stated, one man was drawn for service at the February term of this court, 1901, and another at the May term; of the remaining three, two of them at the present term disqualified themselves herein by previously formed opinions, and the fifth and last, after qualification and acceptance on the *voir dire,* was peremptorily challenged by the Commonwealth. The affiant says that

always having been a Republican in politics as hereinabove stated; and as hereinabove stated your petitioner was at said trial found guilty and sentenced to imprisonment for life by the judgment of said Scott Circuit Court; that your petitioner took an appeal from the judgment so rendered, which judgment was

---

it will be impossible under these circumstances for him to avoid being tried at this term of this court except by a jury composed entirely of his political opponents and exclusively made up of those who were the adherents and admirers of said Goebel, and it will be impossible for him to obtain a fair and impartial trial before any jury so constituted and formed.

The affiant further states that the officers of this county who went to Bourbon County to summon the men for jury service sent directly to the sheriff of Bourbon County, who, together with his deputies, were earnest and ardent adherents, supporters and friends of the said William Goebel and opposed politically to this affiant; that the officers of this county consulted and advised with the said officers of Bourbon County as to the selection of the men summoned, and that Wallace Mitchell, deputy sheriff of said county; James Burke, another deputy sheriff of said county; Joseph Williams, a constable of Bourbon County, and James A. Gibson, a guard for county prisoners in Bourbon County, all of whom are the political adherents of said Goebel and politically opposed to this affiant, acted with them in making the selection and summoning said men.

He says that the political complexion of Bourbon is almost equally Democratic and Republican, there being a slight majority in favor of the Democratic party; that of the Republicans, about three-fifths are colored, but there are many conscientious, fair-minded and respectable citizens of Bourbon County, qualified for jury service, of the same political faith of this affiant, a great many of whom could have been as readily and conveniently summoned and who would give to both sides herein a fair and impartial trial; but that none of such persons were summoned with the exception of two men, and with these exceptions 91 of the 93 names appearing upon the list furnished this affiant as a correct list of the men summoned from Bourbon County are the names of the supporters and adherents of said Goebel, and opposed politically to this affiant, and were summoned for jury service herein by reason of such fact, as this affiant believes.

Affiant further states that said Wallace Mitchell, the deputy sheriff of Bourbon County is now a candidate for sheriff of said county, seeking an election at the hands of the supporters and adherents of said William Goebel, and is their nominee for said office. Said Mitchell, in the fall of 1900, acted in summoning for jury service in this court in the case of the *Commonwealth* v. *Youtsey,* indicted for the same offense of this affiant, and in making the selection of men to serve as jurors therein, made the statement that he would not summons a single Brown Democrat or Republican for such service, and he did not summons any such.

reversed by the Court of Appeals of Kentucky at the September, 1902, term; that your petitioner was again and for the third time tried at a special term of the Scott Circuit Court under the charge hereinabove mentioned, which trial was begun and holden on the third day of August, 1903, and that of the number of one hundred and seventy-six veniremen summoned from Bourbon County, from which the jury was selected, three only, or possibly four, were Republicans, and the remaining one hundred and seventy-three (two) were Goebel Democrats and. were summoned for that reason, and because they differed politically from your petitioner, whereas there were many hundreds of Republicans and Independent Democrats in said county qualified for jury service, but your petitioner states they were purposely avoided and passed by in summoning said veniremen, and that said trial jury was not selected impartially as required by law; that in the year 1896 there were over twenty-six hundred votes in said county for William McKinley, Republican candidate for President of the United States, and about twenty-two hundred votes cast for William J. Bryan, his Democratic opponent; that in the year 1899 William S. Taylor, Republican candidate for Governor of Kentucky, received twenty-seven more votes in said county than were cast for said William Goebel, his Democratic opponent, and that a jury impartially selected could not have been and would not have been, as it was, composed entirely of Goebel Democrats—on his said third trial one juror, a Goebel supporter, but of doubtful politics, excepted.

"Your petitioner further represents that at the third and last trial of this petitioner in said Scott Circuit Court, the judge thereof entered an order directing the sheriff of said Scott County to summon two hundred men from Bourbon County for jury service; that this petitioner's attorneys asked the court to admonish the sheriff to summon an equal number of men of each political party; that this request was refused and thereupon counsel for this petitioner asked the court to instruct the sheriff to summon the talesmen as he came to them,

regardless of political affiliation. This the court also refused to do.

"Your petitioner further states that said trial resulted in a verdict of guilty, affixing the death sentence, and a judgment was thereupon entered, from which judgment an appeal was taken to the Court of Appeals of Kentucky, and on December 6, 1904, the judgment of conviction was for the third time reversed by said court, and that it is the purpose and intention of the Commonwealth of Kentucky to subject this petitioner to a fourth trial under said charge, within a short time, in said Scott Circuit Court.

"Your petitioner further respectfully states that at each of said three trials the facts in relation to the jurors given or hereinbefore recited were embraced in affidavits filed in support of challenges to the panel and the venire and objections to the formation of the jury from the men summoned as hereinabove mentioned, and were also embraced in the motions and grounds for new trial prepared and filed on behalf of this petitioner at each of said trials, but that they were disregarded by the court and your petitioner's challenge to the panels, to the venire and the motions for new trials in each instance overruled; that by reason of section 281 of the Criminal Code of the State hereinbefore quoted, this petitioner was and is denied the right of any exception on said grounds, and the Court of Appeals of Kentucky on each of the three appeals hereinbefore set forth have decided that no irregularity in the summoning or impanelling of the jury is a reversible error, and they are powerless to reverse any judgment of said court by reason of such facts and have held said law to be valid and such law is now the law of this case, and said Court of Appeals of Kentucky are powerless upon any future appeal to reverse any judgment of said court by reason of a repetition of the acts hereinbefore set forth, or for any other irregularity or improper conduct in the formation of the jury, no matter how prejudicial to the substantial rights of your petitioner they may be, and must be followed and cannot be disregarded by this honorable court.

"Your petitioner therefore prays this honorable court that the said indictment and the prosecution pending thereunder in this honorable court against your petitioner be removed into the Circuit Court of the United States for the Eastern District for trial at the next ensuing term of said Circuit Court, and your petitioner will ever pray."

*Mr. Napoleon B. Hays,* Attorney General of the Commonwealth of Kentucky, and *Mr. Lawrence Maxwell, Jr.,* with whom *Mr. Robert B. Franklin* and *Mr. C. J. Bronston* were on the brief, for petitioner in No. 15, original, and for appellant in No. 393:

The decision of the Court of Appeals of Kentucky that Taylor was not Governor of the State on March 10, 1900, presents no Federal question, and, if erroneous, denies no right secured to him by the Constitution or laws of the United States. It would not justify a writ of error from this court, much less a removal of the criminal prosecution, in advance of trial, into the Circuit Court of the United States. *Taylor* v. *Beckham,* 178 U.S. 548.

The office of Governor of Kentucky is created by the constitution and laws of the State, and not by those of the United States. It is the laws of the State which provide for the contest of elections and declare the effect of the decision of the legislature. *In re Converse,* 137 U. S. 624, 631; *Lambert* v. *Barrett,* 157 U. S. 697, 699.

Under the decision of the Court of Appeals of Kentucky in *Powers* v. *Commonwealth,* 110 Kentucky, 386, and by the judgment of this court in *Taylor* v. *Beckham,* 178 U. S. 548, the decision of the legislature of Kentucky, in the contest between Beckham and Taylor for Governor, was final, and not subject to review by any court, state or Federal.

The statutes of Kentucky for the selection of jurors, and the trial of criminal prosecutions, are not repugnant, in any respect, to the Constitution of the United States. Section 2241 Kentucky Statutes; Crim. Code, §§ 191–194, 199, 203, 207–209, 271, 340.

The possibility that officers of the state court will disregard state statutes and unlawfully discriminate in summoning jurors at the next trial, is not ground for removal, under § 641, Rev. Stat.

Unless officers of the state court, charged with the duty of selecting jurors, are guilty of unlawful conduct, there will be no occasion for the parties to challenge the panel on that account, or for the court to pass upon any question in that connection.

If the contingency arises, and rights of the defendant under the Constitution of the United States are denied, his remedy is by writ of error from this court, if need be, as in *Carter* v. *Texas,* 177 U. S. 442, and *Rogers* v. *Alabama,* 192 U. S. 226, or by writ of *habeas corpus* from a Federal court under § 753, Rev. Stat.; *Ex parte Wells,* 3 Woods, 128; *Virginia* v. *Rives,* 100 U. S. 313; *Strauder* v. *West Virginia,* 100 U. S. 303; *Neal* v. *Delaware,* 103 U. S. 370; *Gibson* v. *Mississippi,* 162 U. S. 565; *Murray* v. *Louisiana,* 163 U. S. 101; *In re Wood,* 140 U. S. 278; *Andrews* v. *Swartz,* 156 U. S. 272.

The petition for removal does not allege that the officers of the state court will practice unlawful discrimination in selecting jurors at the next trial.

The possibility that the judge who presides at the next trial in the state court will commit error of law in overruling challenges to the panel is not ground for removing the prosecution into a Federal court.

See *Carter* v. *Texas,* 177 U. S. 442, and *Rogers* v. *Alabama,* 192 U. S. 226, as to state court's refusal to consider evidence in support of objections to the panel; unlawful discrimination in summoning jurors may be ground for a writ of error but is not ground for removal. It is not uncommon for inferior state courts to err in construing the Constitution and laws of the United States, but a method is provided for the decent and orderly revision of their judgments. They do not forfeit their jurisdiction, because they have committed error of law.

While the guaranty of equal protection of the laws under the Fourteenth Amendment applies to action of a State through its

courts, as well as through its legislature, the claim, on account of action by a state court, cannot be made, in advance of the trial, on the allegation that the circumstances requiring protection arise during the trial, and that when they arise the court will deny the protection.

Protection against action by a State, through its courts, has never been accorded except on writ of error after the state court has acted.

If there is no writ of error from this court to the Court of Appeals of Kentucky, or to the Circuit Court of Scott County, to review the rulings of that court in connection with the impaneling of the jury, that might furnish a ground for writ of *habeas corpus* after conviction, but it does not justify the removal of the prosecution into the Federal court in advance of trial.

The statute will not be enlarged by construction. *Virginia* v. *Paul*, 148 U. S. 107, 114; *Tennessee* v. *Davis,* 100 U. S. 257; *Virginia* v. *Rives*, 100 U. S. 313; *Davis* v. *South Carolina*, 107 U. S. 597; *In re Neagle*, 135 U. S. 1; *Huntington* v. *Attrill*, 146 U. S. 657.

The right to trial by an impartial jury in a state court is not guaranteed by the Constitution or laws of the United States. *Brooks* v. *Missouri*, 124 U. S. 394; *Central Land Co.* v. *Laidley*, 159 U. S. 103; *Morrow* v. *Brinkley*, 129 U. S. 178; *Howard* v. *Fleming*, 191 U. S. 126; *In re Converse*, 137 U. S. 624.

Section 281 of the Criminal Code of Kentucky, providing that decisions upon challenges shall not be subject to exception, is not repugnant to the Constitution of the United States and does not authorize a removal, in advance of trial.

The right of appeal in a criminal case is left entirely to the discretion of the State, and is not guaranteed by the Federal Constitution. *Kohl* v. *Lehlback*, 160 U. S. 293; *Mallett* v. *North Carolina*, 181 U. S. 589; *Missouri* v. *Lewis*, 101 U. S. 2 *Andrews* v. *Swartz*, 156 U. S. 272.

If any right of a defendant in a criminal case, under the Constitution or laws of the United States, in connection with a

challenge to a panel, or upon motion to set aside an indictment, or upon motion for a new trial, is denied by a state court, the remedy is by writ of error from this court, as in *Carter* v. *Texas*, 177 U. S. 442, and *Rogers* v. *Alabama*, 192 U. S. 226, or by writ of *habeas corpus* from a Federal court, after conviction, under section .753 of the Revised Statutes.

Due process of law and equal protection of the laws do not require that there shall be right of appeal from a criminal prosecution in the state court. *Andrews* v. *Swartz*, 156 U. S. 272.

The State of Kentucky, without violating the Federal Constitution, might provide that there should be no appeal in any criminal case. For nearly a century there was no appeal in criminal cases in the Federal courts.

*Mr. Frank S. Black* and *Mr. E. L. Worthington*, with whom *Mr. Richard Yates, Mr. H. Clay Howard, Mr. James C. Sims* and *Mr. R. C. Kinkead* were on the brief, for defendant in No. 15 and for appellee in No. 393:

The uncontroverted allegations of the first paragraph of the petition for removal are that an absolute, unconditional, valid pardon was issued, delivered to, and accepted by, appellee for the identical offense herein charged; that said pardon has been thrice denied by the highest court in Kentucky; that, therefore, he is denied or cannot enforce, in the judicial tribunals of said State, the equal civil rights secured to him, as a citizen of the United States, by the laws thereof.

Unless there is a record contradiction, the sworn allegations of a petition for removal, which are not traversed, must be taken as true. *Dishon* v. *C., N. O. & T. P. Ry. Co.*, 133 Fed. Rep. 471; *Toledo Traction Co.* v. *Cameron*, 137 Fed. Rep. 48; 18 Ency. Pl. and Pr. 372. Section 641 is constitutional. *Ex parte Virginia*, 100 U. S. 339; *Strauder* v. *West Virginia*, 100 U. S. 303; *Neal* v. *Delaware*, 103 U. S. 370; *Bush* v. *Kentucky*, 107 U. S. 110; *Gibson* v. *Mississippi*, 162 U. S. 565; *Smith* v. *Mississippi*, 162 U. S. 592; *Murray* v. *Louisiana*, 163 U. S. 101;

*Williams* v. *Mississippi,* 170 U. S. 213; *Virginia* v. *Rives,* 100 U. S. 313; *Tennessee* v. *Davis,* 100 U. S. 257.

The view was taken for some years after the Fourteenth Amendment was promulgated, that its restrictions applied exclusively to prevent discrimination by the States against the negro on account of his race or color, and the *Slaughter House Cases,* 16 Wall. 36; *Strauder* v. *West Virginia,* 100 U. S. 303; *Ex parte Virginia,* 100 U. S. 339, were erroneously construed by many of the state courts, as actually holding that the Amendment was so restricted.

And indeed, Congress, too, for many years, must have believed that the application of the Amendment would be limited as stated in the opinion in the *Slaughter House Cases.* See sec. 16, act of May 31, 1870, 16 Stat. 144; act of March 1, 1875, 18 Stat. 335, and last clause of act of June, 1879, 21 Stat. 43, and sec. 17 of the act of May 31, 1870 now sec. 5510, Rev. Stat.

This court has long since discarded that view, and has held, without qualification, that its provisions apply to every form of state action, legislative, political or judicial, regardless of race or color, and to the official acts of every state officer, as well, and to the benefit of all persons within the jurisdiction of any State.

For definition of equal civil rights and equal protection of the laws as guaranteed by the Amendment, see *Kentucky Railroad Tax Cases,* 155 U. S. 321; *Holden* v. *Hardy,* 169 U. S. 366.

A State, by its judicial tribunals, cannot deny to a citizen of the United States "a right secured to him by any law providing for the equal civil rights of citizens of the United States." *Bowman* v. *Lewis,* 101 U. S. 22; *Pace* v. *Alabama,* 106 U. S. 583; *Moore* v. *Missouri,* 159 U. S. 673; Guthrie, Fourteenth Amendment, pp. 107, 108.

The petition for removal under § 641, Rev. Stat., may be filed at any time before final hearing, though there have been previous trials and reversals. *Bush* v. *Kentucky,* 107 U. S. 110;

*Parker* v. *Vanderbilt*, 136 Fed. Rep. 246; *Detroit* v. *Detroit City Ry.*, 54 Fed. Rep. 10.

The cases of *Strauder* v. *West Virginia, Virginia* v. *Rives, Ex parte Virginia, Neal* v. *Delaware* and *Gibson* v. *Mississippi,* hold that the Amendment is much broader than § 641; that many rights are protected by the Amendment, a denial of which by the State during the trial cannot constitute grounds for removal. These cases seem to hold that, as the cause for removal must under the act exist before the trial or final hearing of the cause, that that cause must necessarily be a denial of equal civil rights by either a law or a constitutional provision of the State. The first paragraph of the petition for removal fully meets, as we believe, all the requirements of these decisions, even though they do require a law or constitutional amendment to justify the removal. It alleges that certain laws of Kentucky stand between appellee and the courts of the State, and force the latter to deny the former the equal protection of the laws secured by this Amendment.

The several decisions of the highest court of Kentucky have become the law of the case and have become binding upon all the courts of the Commonwealth. *Rowland* v. *Craig,* Sneed, 330; *Morgan* v. *Dickerson,* 1 T. B. Monroe, 20; *Sims* v. *Reed,* 12 B. Mon. 51; *Gray* v. *Dickerson,* 11 Ky. Law Rep. 890; *L. & N. R. R. Co.* v. *Survant,* 19 Ky. Law Rep. 1576; *Commonwealth* v. *L. & N. R. R. Co.,* 20 Ky. Law Rep. 351; *L. & N. R. R. Co.* v. *Ricketts,* 21 Ky. Law Rep. 662; *Breashears* v. *Letcher County,* 21 Ky. Law Rep. 1250; *Wilson's Assignees* v. *Louisville Nat. Bk.,* 25 Ky. Law Rep. 1065; *Booth & Co.* v. *Bethel,* 25 Ky. Law Rep. 747; *Brown* v. *Crow,* Hardin, 451; *Bryan* v. *Bekley,* Litt. Sel. Cas. 91; *Lewis* v. *Lewis,* 11 Ky. Law Rep. 413.

Equal civil rights are denied by state decisions no less than by state statutes. *Neal* v. *Delaware, Bush* v. *Kentucky, supra.*

When the common law of England was adopted as a part of our jurisprudence, the pardoning power, as exercised by the British Crown and Parliament, was well understood. Before the Revolution it was exercised in those parts of this country

which were British colonies.   The same power in its essential elements, has been conferred upon the Executive of our States and Nation.   *United States* v. *Klein*, 13 Wall. 128.

When the validity and effect of a pardon are to be determined the established principles of the common law will control in state and Federal courts, in the absence of enactment to the contrary.   *United States* v. *Wilson*, 7 Pet. 150.

When a citizen of the United States is arrested and tried for a state offense notwithstanding he holds a valid pardon which is denied recognition in the highest state court, in legal contemplation, an innocent man is thrown in prison, and the Federal courts can. restore his liberty, either by *habeas corpus* or removal proceedings.   In the latter, a trial can be had upon the merits of the charge, and the pardon, heard upon its merits, can be offered in arrest of judgment, if need be, from any cause. *Ex parte Wells*, 18 How. 310.   See also *Ex parte Slauson*, 73 Fed. Rep. 666; *Whitten* v. *Tomlinson*, 160 U. S. 231; *Iasigi* v. *Van de Carr*, 166 U. S. 391.

Taylor having lawfully been inducted into office, and holding actual possession thereof, claiming title by virtue of a certificate of election, his authorized official acts until legally and actually ousted are binding upon the State and third persons regardless of the alleged determination of a contest.   His powers continue, as originally invested, pending any litigation that may properly ensue, and it is his duty to hold said office until title thereto is finally adjusted.   *United States* v. *Mitchell*, 136 Fed. Rep. 896; *Brady* v. *Levitt*, 17 Kansas, 471; *Kansas* v. *Durkee*, 12 Kansas, 308; *Ex parte Powers*, 129 Fed. Rep. 985; *Taylor* v. *Beckham*, 178 U. S. 548.

Title to an office cannot be determined by an ordinary civil suit between private individuals.   It must be by *quo warranto*. *People* v. *Olds*, 58 Am. Dec. 398; *Marke* v. *Wright*, 13 Indiana, 548; *Cochran* v. *McCleary*, 22 Iowa, 75; *Updegraff* v. *Crane*, 47 Pa. St. 103.   The decision of the Court of Appeals of Kentucky that Taylor was not Governor is therefore of no effect.

If appellee was pardoned, no court had jurisdiction to arrest

or try him.   No questions involve more general principles of law than those of pardon and jurisdiction, questions and principles common to all courts, local and peculiar to none.   See *United States* v. *Wilson,* 7 Pel. 150 cited *supra.*   Because the highest state court has passed upon and denied a pardon, it is not therefore a local question, peculiar to that State, and this court is not bound to follow that decision.   The established principles of the common law control in determining the validity of a pardon.   *Olcott* v. *Supervisors,* 16 Wall. 678; *Mohr* v. *Manierre,* 7 Biss. 419.

Federal courts do not follow state decisions upon the construction or enforcement of state laws, if they violate the Federal Constitution, or the rights it guarantees.   *Rowan* v. *Runnels,* 5 How. 134; *Bank of Ohio* v. *Knoop,* 16 How. 369; *Jefferson Branch Bank* v. *Skelly,* 1 Black, 436.

The decisions rejecting Powers' pardon cannot be here followed, not only because general principles of law, common to all courts, are involved, but because they deny to Powers the equal protection of the law in such a discrimination.

The Federal Government recognized Taylor as Governor of Kentucky and such recognition binds all courts.   Black's Constitutional Law, pp. 83, 241–244; *Luther* v. *Borden,* 7 How. 1; *Jones* v. *United States,* 137 U. S. 202; *Hamilton* v. *McClaughry,* 136 Fed. Rep. 445; *Sutton* v. *Tiller,* 98 Am. Dec. 471; *The Hornet,* Fed. Cas. No. 6,705.

MR. JUSTICE HARLAN, delivered the opinion of the court.

Powers, the accused, was indicted in the Circuit Court of Franklin County, Kentucky, for the crime of having been an accessory before the fact to the murder of William Goebel, who was assassinated in that county on the thirtieth day of January, 1900.   The prosecution was removed by change of venue to the Circuit Court of Scott County.   In the latter court the accused was found guilty and his punishment fixed by the jury at confinement in the state penitentiary for life.   Upon appeal

to the Court of Appeals of Kentucky the judgment was reversed and a new trial ordered. *Powers* v. *Commonwealth,* 110 Kentucky, 386. At the second trial the verdict was guilty, and the punishment was again fixed at confinement in the penitentiary for life. Upon appeal, that judgment was reversed and a new trial ordered. *Powers* v. *Commonwealth,* 114 Kentucky, 239. A third trial occurred, which resulted in a verdict of guilty, with the punishment fixed at death. This judgment was also reversed and the case sent back for a new trial. *Powers* v. *Commonwealth,* 83 S. W. Rep. 146.

When the case came on for trial the fourth time the accused tendered and offered to file in the state court his petition praying, upon grounds therein stated (and which appear in the above statement) that the prosecution be removed for trial into the Circuit Court of the United States for the Eastern District of Kentucky. But the state court would not allow the petition to be filed. Subsequently, a partial transcript of the record was filed in the Federal court, and the case was docketed in that court. The Commonwealth objected to the filing of the transcript from the state court and to the docketing of the case in the Federal court, and moved to vacate the order of filing and docketing. That motion was overruled.

Thereupon the accused, by his counsel, presented to the Federal court an application for a writ of *habeas corpus,* in order that he might be discharged from the custody of the state authorities. For the reasons set forth in the opinion of that court the application was granted and a writ ordered to issue commanding the jailer of Scott County, who held the accused in custody for the State, to deliver him into the custody of the marshal of the Federal court, which was done, that officer being directed to keep the accused confined in the county jail of Campbell County, Kentucky, until the further order of the Federal court. *Commonwealth* v. *Powers,* 139 Fed. Rep. 452. From that order the Commonwealth of Kentucky has prosecuted the above appeal (No. 393), the sole ground of such appeal being that the Federal court was without jurisdiction to make the

order allowing the writ of *habeas corpus* and taking the accused from the custody of the state authorities. The accused has moved to dismiss the appeal because the remedy of the Commonwealth was by a writ of mandamus.

The Commonwealth also asked leave to file a petition for mandamus to compel the Federal court to remand the case to the state court and to restore the custody of the accused to the state authorities. Leave to file was granted and the Federal judge, having made his return, submitted the rule upon the record of the case, including the opinion filed by the court below when the writ of *habeas corpus* was awarded to take the accused from the custody of the state authorities. This is case No. 15, Original.

The fundamental question to be determined is whether the removal of this criminal prosecution from the state court into the Federal court was authorized by any statute of the United States. We say, by any statute, because the subordinate judicial tribunals of the United States can exercise only such jurisdiction, civil and criminal, as may be authorized by acts of Congress. Chief Justice Marshall, speaking for this court, has said that "courts which originate in the common law possess a jurisdiction which must be regulated by their common law, until some statute shall change their established principles; but courts which are created by written law, and whose jurisdiction is defined by written law, cannot transcend that jurisdiction." *Ex parte Bollman &c.*, 4 Cr. 75, 93; *United States* v. *Hudson*, 7 Cr. 32, 33; *Cary* v. *Curtis*, 3 How. 236, 245; *McIntire* v. *Wood*, 7 Cr. 504, 506; *United States* v. *Eckford*, 6 Wall. 484, 488; *Sheldon* v. *Sill*, 8 How. 441, 449; *Jones* v. *United States*, 137 U. S. 202, 211; *The Sewing Machine Companies*, 18 Wall. 553, 571; *Holmes* v. *Goldsmith*, 147 U S. 150, 158.

The adjudged cases make it clear that whatever the nature of a civil suit or criminal proceeding in a state court, it cannot be *removed* into a Federal court unless warrant therefor be found in some act of Congress.

We are now to inquire whether the case was removable from the state court, in virtue of any act of Congress.

The removal of this prosecution into the Federal court was rested on §§ 641, 642 Revised Statutes, which are as follows:

"Sec. 641. When any civil suit or criminal prosecution is commenced in any state court, for any cause whatsoever, against any person *who is denied or cannot enforce in the judicial tribunals of the State, or in the part of the State where such suit or prosecution is pending, any right secured to him by any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction of the United States,* . . . such suit or prosecution may upon the petition of such defendant, filed in said state court at any time before the trial or final hearing of the cause, stating the facts and verified by oath, be removed, for trial, into the next Circuit Court to be held in the district where it is pending. Upon the filing of such petition all further proceedings in the state courts shall cease, and shall not be resumed except as hereinafter provided. But all bail and other security given in such suit or prosecution shall continue in like force and effect as if the same had proceeded to final judgment and execution in the state court. . . .

"Sec. 642. When all the acts necessary for the removal of any suit of prosecution, as provided in the preceding section, have been performed, and the defendant petitioning for such removal is in actual custody on process issued by said state court, it shall be the duty of the clerk of said Circuit Court to issue a writ of *habeas corpus cum causa,* and of the marshal, by virtue of said writ, to take the body of the defendant into his custody, to be dealt with in said Circuit Court according to law and the orders of said court, or, in vacation, of any judge thereof; and the marshal shall file with or deliver to the clerk of said state court a duplicate copy of said writ."

The contention of the Commonwealth is that the decisions of this court wholly preclude the suggestion that section 641 authorized the removal of this case into the Federal court. In view of this contention we must see what has been heretofore decided.

Among the cases to which our attention has been called, the first one, in point of time, involving the construction of section 641, is *Ex parte Wells*, 3 Woods, 128, 132, determined in the Circuit Court of the United States for the District of Louisiana, Mr. Justice Bradley presiding. The accused there sought to remove the prosecution from the state court, upon the ground, among others, that such vindictive prejudice existed against them on the part of the law-making and law-administering authorities of the State that they would be denied their rights as citizens in the state court, as well as before any jury that might be impanelled therein under the then existing jury law of the State; consequently, they would not be able to enforce their rights in said court. It was also alleged that the state court and its officers had so manipulated the local law as to deprive the accused of an impartial jury, and that they would be deprived of the full and equal benefit of the laws and proceedings for the security of their persons. The court, having found that there was nothing in the constitution or laws of the State that was hostile to the equal rights of the accused, in any particular, said: "The allegations with regard to the manipulation of the law in such manner as to secure a jury inimical to the petitioners, and with regard to the existence of a general prejudice against them in the minds of the court, the jurors, the officials and the people, are not within the purview of the statute authorizing a removal. The Fourteenth Amendment to the Constitution, which guarantees the equal benefit of the laws on which the present application is based, only prohibits state legislation violative of said right; it is not directed against individual infringements thereof. The civil rights bill of 1866 was broader in its scope, undertaking to vindicate those rights against individual aggression; but, still, only when committed under color of some 'law, statute, ordinance, regulation or custom.' And when that provision in this law, which is transferred to section 641 of the Revised Statutes, gave the right to remove to the United States courts a cause commenced in a state court against a person who is denied or cannot enforce any

of the rights secured by the act, it had reference to a denial of those rights or impediments to their enforcement, arising from some state law, statute, regulation or custom. It is only when some such *hostile state legislation* can be shown to exist, interfering with the party's right of defense, that he can have his cause removed to the Federal court."

In *Strauder* v. *West Virginia*, 100 U. S. 303, 309, 312, which was an indictment in a court of West Virginia against a person of the African race for the crime of murder, the accused, before the trial commenced, presented his petition for the removal of the case into the United States court upon the ground that the laws of the State, in relation to both grand and petit juries, discriminated against colored citizens, because of their race, in violation of the Constitution and laws of the United States. The petition for removal was denied, and the accused was forced to a trial in the state court, found guilty, and sentenced. That judgment was affirmed by the Supreme Court of Appeals of the State, and the case was brought here upon writ of error. This court held the state statute to be unconstitutional, as making an illegal discrimination against negroes, because of their race. After referring to what was said in *United States* v. *Reese*, 92 U. S. 214, to the effect that rights and immunities created by or dependent upon the Constitution of the United States can be protected by Congress, and that the form and manner of the protection may be such as Congress in the legitimate exercise of its legislative discretion shall provide, the court said: "There is express authority to protect the rights and immunities referred to in the Fourteenth Amendment, and to enforce observance of them by appropriate Congressional legislation. And one very efficient and appropriate mode of extending such protection and securing to a party the enjoyment of the right or immunity, is a law providing for the removal of his case from a state court, in which the right is denied *by the state law*, into a Federal court, where it will be upheld. This is an ordinary mode of protecting rights and immunities conferred by the Federal Constitution and laws. Section 641 is

such a provision." Adverting to the act from which sections 1977 and 1978 of the Revised Statutes were taken the court further said: "This act puts in the form of a statute what had been substantially ordained by the constitutional amendment. It was a step towards enforcing the constitutional provisions. Section 641 was an advanced step, fully warranted, we think, by the fifth section of the Fourteenth Amendment." Observe that this was the case of a state statute held to prevent the enforcement in the judicial tribunals of the State of rights secured to the accused by the Constitution of the United States. Upon that point this court said: "That the petition of the plaintiff in error, filed by him in the state court before the trial of his case, made a case for removal into the Federal Circuit Court, under section 641, is very plain, if, by the constitutional amendment and section 1977 of the Revised Statutes, he was entitled to immunity from discrimination against him in the selection of jurors, because of their color, as we have endeavored to show that he was. It set forth sufficient facts to exhibit a denial of that immunity, and *a denial by the statute law of the State.* There was error, therefore, in proceeding to the trial of the indictment against him after his petition was filed, as also in overruling his challenge to the array of the jury, and in refusing to quash the panel."

In *Virginia* v. *Rives,* 100 U. S. 313, 321, which was an indictment in a court of Virginia against colored persons charged with the crime of murder, the accused moved that the venire, which was composed entirely of white men, should be modified so as to allow one-third of the jury to be composed of colored men. That motion was overruled. Thereupon the defendants, before the trial, sought by petition to have the prosecution removed into the Federal court, upon the ground that the right secured to them by the act of Congress providing for the equal civil rights of all citizens of the United States was denied to them in *the judicial tribunals of the county in which the prosecution was pending;* also, upon the ground that the grand jury finding the indictment had been organized in discrimination against the

colored race because of their race. The application to remove the case was denied, and the defendants were tried in the state court and convicted. The case at that stage of the trial was docketed, at the motion of the accused, in the Federal court, and upon writ of *habeas corpus* sued out from that court they were taken from the custody of the State and placed in the custody of the United States marshal. The Commonwealth of Virginia obtained from this court a rule against the judge of the Federal court to show cause why the accused should not be redelivered to the authorities of the State to be dealt with according to the laws of that Commonwealth. The judge made his return to the rule, averring that the indictments were removed into the Federal court by virtue of section 641 of the Revised Statutes. It is important to notice that there was no claim in that case that either the Constitution or laws of Virginia denied the civil rights of colored people or stood in the way of their enforcing the equal protection of the laws. The law, this court said, made no discrimination against them because of their color, nor any discrimination at all. And further, referring to the officer charged with the duty of selecting jurors, this court said: "He made himself liable to punishment at the instance of the State and under the laws of the United States. In one sense, indeed, his act was the act of the State, and was prohibited by the constitutional amendment. But, *inasmuch as it was a criminal misuse of the state law*, it cannot be said to have been such a 'denial or disability to enforce in the judicial tribunals of the State' the rights of colored men, *as is contemplated by the removal act*. Section 641. It is to be observed that act gives the right of removal only to a person 'who is denied, or cannot enforce, in the judicial tribunals of the State his equal civil rights.' And this is to appear before trial. *When a statute of the State* denies his right, or interposes a bar to his enforcing it, in the judicial tribunals, the presumption is fair that they will be controlled by it in their decisions; and in such a case a defendant may affirm on oath what is necessary for a removal. Such a case is clearly within the provisions of section 641. But

when a subordinate officer of the State, in violation of state law, undertakes to deprive an accused party of a right which the statute law accords to him, as in the case at bar, it can hardly be said that he is denied, or cannot enforce, 'in the judicial tribunals of the State' the rights which belong to him. In such a case it ought to be presumed the court will redress the wrong. If the accused is deprived of the right, the final and practical denial will be in the judicial tribunal which tries the case, after the trial has commenced. If, as in this case, the subordinate officer, whose duty it is to select jurors, fails to discharge that duty in the true spirit of the law; if he excludes all colored men solely because they are colored; or if the sheriff to whom a *venire* is given, composed of both white and colored citizens, neglects to summon the colored jurors only because they are colored; or if a clerk whose duty it is to take the twelve names from the box rejects all the colored jurors for the same reason— it can with no propriety be said the defendant's right is denied by the State and cannot be enforced in the judicial tribunals. The court will correct the wrong, will quash the indictment or the panel, or, if not, the error will be corrected in a superior court. *We cannot think such cases are within the provisions of section* 641. *Denials of equal rights in the action of the judicial tribunals of the State are left to the revisory powers of this court.*"

The question as to the scope of section 641 of the Revised Statutes again arose in the subsequent cases of *Neal* v. *Delaware*, 103 U. S. 370, 386; *Bush* v. *Kentucky*, 107 U. S. 110, 116; *Gibson* v. *Mississippi*, 162 U. S. 565, 581, 584, and *Charley Smith* v. *Mississippi*, 162 U. S. 592, 600. In each of these cases it was distinctly adjudged, in harmony with previous cases, that the words in section 641—"who is denied or cannot enforce in the judicial tribunals of the State, or in the part of the State where such suit or prosecution is pending, any right secured to him by any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction of the United States"—did not give the right of *removal*, unless

the constitution or the laws of the State in which the criminal prosecution was pending denied or prevented the enforcement in the judicial tribunals of such State of the equal rights of the accused as secured by any law of the United States.   Those cases, as did the prior ones, expressly held that there was no right of *removal* under section 641, where the alleged discrimination against the accused, in respect of his equal rights, was due to the illegal or corrupt acts of administrative officers, unauthorized by the constitution or laws of the State, as interpreted by its highest court.   For wrongs of that character the remedy, it was held, is in the state court, and ultimately in the power of this court, upon writ of error, to protect any right secured or granted to an accused by the Constitution or laws of the United States, and which has been denied to him in the highest court of the State in which the decision, in respect of that right, could be had.

In *Gibson* v. *Mississippi,* 162 U. S. 565, 581, 584, the words of this court as to the scope of section 641 were very emphatic. In that case there was a conviction in a state court of a negro for the crime of murder, and in which one of the questions, upon writ of error to the highest court of that State, was as to the action of the trial court in denying a petition for the removal of the prosecution to the Federal court.   This court said: "When the constitution and laws of a State, as interpreted by its highest judicial tribunal, do not stand in the way of the enforcement of rights secured equally to all citizens of the United States, the possibility that during the trial of a particular case the state court may not respect and enforce the right to the equal protection of the laws, constitutes no ground, under the statute, for *removing* the prosecution into the Circuit Court of the United States in advance of a trial.   We may repeat here what was said in *Neal* v. *Delaware,* namely, that in thus construing the statute 'we do not withhold from a party claiming that he is denied, or cannot enforce in the judicial tribunals of the State, his constitutional equality of civil rights, all opportunity of appealing to the courts of the United States for the re-

dress of his wrongs.    For if not entitled, under  the statute, to
the  removal of the suit or prosecution, he may, when denied, in
the subsequent  proceedings of the state court, or in the execu-
tion  of  its judgment, any right, privilege or immunity given or
secured to him by the Constitution or laws of the United  States,
bring  the  case here  for review.'   We therefore held  in  *Neal*
v. *Delaware* that Congress had not authorized a removal of the
prosecution from the state court, where jury commissioners or
other  subordinate  officers had, *without authority derived from
the constitution and laws of the State,* excluded colored citizens
from  juries because  of  their race."    Again: "The application
was to  remove  the prosecution  from the state court, and a  re-
moval, as we have seen, could  not  be ordered upon the  ground
simply that citizens of  African descent had been improperly ex-
cluded, because  of  their race, and  without  the  sanction of the
constitution and laws of  the  State, from  service on  previous
grand juries, or  from service on  the particular grand  jury that
returned the indictment against the accused.    We do not over-
look in this connection the fact that the petition for the removal
of the cause into the  Federal court alleged that the accused, by
reason of the great prejudice against him on account of his color,
could not secure a fair and impartial trial in the county, and that
he prayed an  opportunity to subpœna witnesses to  prove that
fact.    Such evidence, if it had been introduced, and however
cogent, could not, as already shown, have entitled the accused
to the *removal* sought; for the alleged existence of race preju-
dice interfering with a fair trial was not to be attributed to the
constitution and laws of the State.    It was incumbent upon the
state court to see to it that the accused had a fair and impartial
trial, and to set aside any verdict of guilty based on prejudice
of race."

The cases to which we have adverted had reference, it is true,
to alleged discriminations against negroes because of their race.
But the rules announced in them equally apply where the ac-
cused is of the white race.  Section 641, as well as the Four-
teenth Amendment of the Constitution, is for the benefit of all

of every race whose cases are embraced by its. provisions and not alone for the benefit of the African race.

We have not overlooked the suggestion, earnestly pressed upon our attention, that it is impossible for the accused to obtain a fair trial in the locality where the prosecution is pending. Indeed, the suggestion is, in effect, that there was a deliberate purpose on the part of those charged with the administration of justice in that locality to take his life, under the forms of law, even if the facts did not establish his guilt of the crime charged. It is true that looking alone at the petition for removal, the trials of the accused disclose such misconduct on the part of administrative officers connected with those trials as may well shock all who love justice and recognize the right of every human being, accused of crime, to be tried according to law. The case as made by the record, it must be conceded, tends to show, if it does not justify the belief, that administrative officers, having connection with the trial of the accused, had it in mind, at each trial, to exclude from the jury, so far as it was possible to do so, every person, however competent, who belonged to the same political party as the accused. In his separate opinion in *Powers* v. *Commonwealth*, 83 S. W. Rep. 146, 149, Judge Barker, of the Court of Appeals of Kentucky, referring to the third trial of the accused, said: "It is clear that the trial judge was of opinion that it was not an offense against the Fourteenth Amendment or a denial of the equal protection of the laws to the defendant to exclude Republicans [the accused being a Republican in politics] from the jury, solely because they were Republicans, provided the selected Democrats [the deceased Goebel being a Democrat in politics] were possessed of the statutory qualifications required for jury service."

It is appropriate here to recall that the Circuit Court, referring to the petition for removal, said: "The Commonwealth of Kentucky has not filed a reply to said petition for removal, or in any way taken issue with the defendant as to any of the allegations thereof. Said allegations must, therefore, be accepted as true, save in so far as they may be contradicted by the tran-

script on file herein.    In the case of *Dishon* v. *C., N. O. & T. P. Ry. Co.*, 133 Fed. Rep. 471, 66 C. C. A. 345, Judge Richards, in discussing the affirmative allegations of a petition for removal in a civil suit under the jurisdictional acts of 1887–88, said: 'If these averments were not true, the plaintiff should have denied them, and an issue would then have been made for the court below to try and determine.    No answer was filed; no issue in any other way was taken.    The plaintiff contented himself with making a motion to remand, and which only raised a legal question, namely, whether, upon the facts stated in the petition for removal, taken in connection with the record, a case for removal was made out.'    In the case of *Whitten* v. *Tomlinson*, 160 U. S. 231, Justice Gray, in referring to a petition for a writ of *habeas corpus* under sections 751–755, Rev. Stat. U. S., said: 'In a petition for a writ of *habeas corpus*, verified by oath of the petitioner, as required by Rev. Stat. U. S. § 754, facts duly alleged may be taken to be true, unless denied by the return or controlled by other evidence.    But no allegation of fact in the petition can be assumed to be admitted, unless distinct and unambiguous.'    The allegations of the petition for removal are not borne out by the transcript in all their detail.    They are, however, borne out to a substantial degree, and are not contradicted in any substantial particular.    It establishes the discrimination complained of in the selection of the jurors by the subordinate officers having to do therewith on the second and third trials, and that on both trials the Scott Circuit Court held that such discrimination was not illegal and the defendant had no right to complain thereof, it not being claimed that the jurors selected did not possess the statutory qualifications.    As to the first trial, all that the transcript shows is that it was one of the grounds of defendant's motion for new trial that the Circuit judge, after the regular panel was exhausted, had refused to draw from the wheel the names of jurors placed there in the fall of 1899, before any motive for discrimination had arisen, concerning which Judge Du Relle had this to say in the opinion delivered by him on behalf of the majority of the Court of Ap-

peals on the first appeal: 'In the grounds relied on in the motion for new trial it is stated that the court overruled the motion of appellant, after the regular panel was exhausted, to draw the remaining names necessary to complete the jury from the jury wheel. It is to be regretted that, in a case concerning which so much feeling existed, the simple and easy mode was not adopted, which would have put beyond cavil the question of the accused having a trial by jury impartially selected. This will doubtless be done upon the succeeding trial.' "

Taking then the facts to be as represented in the petition for removal, still the remedy of the accused was not to have the prosecution removed into the Federal court—that court not being authorized to take cognizance of the case upon removal from the state court. It is not contended, as it could not be, that the constitution and laws of Kentucky deny to the accused any rights secured to him by the Constitution of the United States or by any act of Congress. Such being the case, it is impossible, in view of prior adjudications, to hold that this prosecution was removable into the Circuit Court of the United States by virtue of section 641 of the Revised Statutes. Such a case as the one before us has not been provided for by any act of Congress; that is, a Circuit Court of the United States has not been authorized to take cognizance of a criminal prosecution commenced in a state court for an alleged crime against the State, where the constitution and laws of such State do not permit discrimination against the accused in respect of such rights as are specified in the first clause of section 641. This court, while sustaining the subordinate courts of the United States in the exercise of such jurisdiction as has been lawfully conferred upon them, must see to it that they do not usurp authority not affirmatively given to them by acts of Congress. In *M. C. & L. M. Railway Co.* v. *Swan,* 111 U. S. 379, 382, we said that " the rule, springing from the nature and limits of the judicial power of the United States, is inflexible and without exception, which requires of this court, of its own motion, to deny its own jurisdiction, and, in the exercise of its appellate power, that of

all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record on which, in the exercise of that power, it is called to act. On every writ of error or appeal the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." This principle has been again and again reaffirmed. *Great Southern Fire Proof Hotel Co.* v. *Jones,* 177 U. S. 449, 453, and authorities there cited.

Now, it affirmatively appears of record that the Circuit Court has taken jurisdiction of this case on removal from the state court, when, as we hold, no act of Congress authorized it to do so. We cannot, in fidelity to the law, as declared in former cases, overlook this defect of jurisdiction in the court below or fail to express our inability to concur in the views of the learned court below upon this point.

The Circuit Court said: " I, therefore, conclude that the prior action of the Scott Circuit Court denying the defendant the equal protection of the laws is a real hindrance and obstacle to his asserting his right thereto in a future trial therein—just as real as an unconstitutional statute would be—and that the defendant is denied the equal protection of the laws in said court, within the meaning of said section, and entitled to a removal on account thereof. He is denied in said court the equal protection of the laws because he has been denied, and such denial has never been set aside, but remains in full force and effect. . . . By an 'inability to enforce in the judicial tribunals of the State' is meant, as I construe the statute, any judicial tribunal of the State that may have jurisdiction of the prosecution." This view is met by what has been said in former cases, namely, that the words in section 641—"who is denied or cannot enforce in the judicial tribunals of the State"—have no application to any case where the rights secured to an accused "by any law providing for the equal civil rights of citizens of the United States,

or of all persons within the jurisdiction of the United States,"
are recognized or are not denied by the constitution or laws of
the State in which the prosecution is pending.

Under this holding, the accused is not deprived of opportu-
nity to have his rights, of whatever nature, which are secured
or guaranteed to him by the Constitution or laws of the United
States, fully protected by a Federal court.    But it is said that
the action of the trial court in refusing to quash the indictment
or the panel of petit jurors, although the motion to quash was
based on Federal grounds, cannot, under the laws of Kentucky,
be reviewed by the Court of Appeals, the highest court of that
Commonwealth.    If such be the law of Kentucky, as declared
by the statutes and by the Court of Appeals of that Common-
wealth, then, after the case is disposed of in that court by final
judgment, in respect of the matters of which, under the local
law, it may take cognizance, a writ of error can run from this
court *to the trial court* as the highest court of Kentucky *in which
a decision of the Federal question could be had;* and this court in
that event, upon writ of error, reviewing the final judgment of
the trial court, can exercise such jurisdiction in the case as may
be necessary to vindicate any right, privilege or immunity spe-
cially set up or claimed under the Constitution and laws of the
United States, and in respect of which the decision of the trial
court is made final by the local law; that is, it may reëxamine
the final judgment of the trial court so far as it involved and
denied the Federal right, privilege or immunity asserted.    This
must be so, else it will be in the power of a State to so regulate
the jurisdiction of its courts as to prevent this court from pro-
tecting rights secured by the Constitution, and improperly de-
nied in a subordinate state court, although specially set up and
claimed.    What we have said is clear from section 709 of the
Revised Statutes, which declares that "A final judgment or de-
cree in any suit in the highest court of a State, in which a de-
cision *in* the suit could be had,  . . .  where any title, right,
privilege or immunity is claimed under the Constitution,  . . .
and the decision is *against* the title, right, privilege or immunity

specially set up or claimed, by either party; under such Constitution, . . . . may be reëxamined and reversed or affirmed in the Supreme Court upon a writ of error." Looking at the object of that section it must be held that this court has jurisdiction, upon writ of error to reëxamine the final judgment of a subordinate state court denying a Federal right, specially set up or claimed, if, under the local law, that court is the highest court of the State entitled to pass upon such claim of Federal right. The great case of *Cohens* v. *Virginia*, 6 Wheat. 264, which was a criminal prosecution for a misdemeanor, was brought to this court, upon writ of error, from the Quarterly Session Court for the Borough of Norfolk, Virginia, and our jurisdiction was sustained upon the ground that such court was the highest court of the State in which, under the laws of Virginia, that case was cognizable. In *Downham* v. *Alexandria*, 9 Wall. 659, which was a suit for taxes against a dealer in liquors, the court said: "The legislature, then, having thought fit to make the judgment of the District Court in this case final and without appeal, that court is, for this case, the highest court in which the decision could be made; and the writ of error is, therefore, warranted by the act of Congress, and regular." In *Gregory* v. *McVeigh*, 23 Wall. 294, 306, which was a writ of error to the Corporation Court of Alexandria, Virginia, and in which there was a motion to dismiss for want of jurisdiction, this court said: "The Court of Appeals is the highest court in the State of Virginia. If a decision of a suit could be had in that court, we must wait for such a decision before we can take jurisdiction, and then can only examine the judgment of that court. If, however, the suit is one of which that court cannot take jurisdiction, we may reëxamine the judgment of the highest court which, under laws of the State, could decide it. . . . We think, therefore, that the judgment of the Corporation Court of the city of Alexandria is the judgment of the highest court of the State in which a decision of the suit could be had, and that we may reëxamine it upon error." In *Bergemann* v. *Backer*, 157 U. S. 655, 659, a criminal prosecution for murder

in a subordinate court of New Jersey, this court said: "If the proceedings in the Court of Oyer and Terminer could not, under the laws of New Jersey, be reviewed in a higher court of that State, except upon the allowance of a writ of error by such court or by some judge, and if such allowance was refused, then the judgment of the court of original jurisdiction was, within the meaning of the acts of Congress, the judgment of the highest court of the State in which a determination of the case could be had, and such judgment could have been, upon writ of error, reëxamined here, if it had denied any right, privilege, or immunity specially set up and claimed under the Constitution of the United States." So, in *Missouri, Kansas &c. Ry. Co.* v. *Elliott,* 184 U. S. 530, 539, in which the defendant made a claim of immunity in virtue of an authority exercised under the United States, it was held that our writ of error ran, not to the Supreme Court of Missouri, but to the Kansas City Court of Appeals, the highest court in which, under the law of that State, the question as to that immunity could be decided.

It is necessary to notice one other point made in behalf of the accused. At each of the trials he pleaded in bar of the prosecution a pardon granted to him on the tenth day of March, 1900, by William S. Taylor, who was alleged to have been, at the time, the duly elected, qualified, actual and acting Governor of Kentucky, having in his possession and under his control all the books, papers, records and archives, as well as the Executive Mansion, belonging to the office of Governor. That pardon, it is alleged, was accepted by the accused. It is further alleged that at the time said pardon was issued Taylor had been recognized, regarded and treated as the lawful Governor of Kentucky by the Executive power and Executive Department of the Government of the United States, including the President, the Attorney General, and the Postmaster General, and by the postmaster at Frankfort, the capital of Kentucky. The petition for removal alleged that the court in which the accused was tried, as well as the Court of Appeals of Kentucky, had refused to recognize said pardon as having any legal effect, and had

thereby denied to him the equal civil rights and the equal protection of the laws secured to him by the above provisions of the Constitution and laws of the United States; consequently, it was contended, he was denied and could not enforce in any judicial tribunal of Kentucky the rights which said pardon gave him.

Manifestly, in view of what has already been said, this question as to the pardon of the accused, does not make a case of removal on the ground of the denial or inability to enforce in the judicial tribunals of Kentucky of a right secured to the accused "by any law providing for the equal civil rights of citizens of the United States or of all persons within the jurisdiction of the United States." Whether the non-recognition by the courts of the State of the validity of the alleged pardon involved a denial of any right secured to the accused by any other law or by the Constitution of the United States, we need not now consider. As the Circuit Court could not, in virtue of section 641, take cognizance of this prosecution or removal, we cannot properly pass upon the merits of any question of Federal right which might arise in the case. It is sufficient to say that if the accused, by reason of the Taylor pardon, acquired any right under the Constitution or laws of the United States, and if at the next trial of his case that right, having been specially set up and claimed, should be denied by the highest court of the State in which a decision of that question could be had, such action of that court, in respect of that pardon, can be reviewed here upon writ of error. We do not perceive that any question arising out of the pardon could make a case under section 641 for the removal of the prosecution from the state court.

We are all of opinion that the order awarding the writ of *habeas corpus cum causa* must be reversed, with directions to set aside that order as well as the order docketing the case in the Circuit Court of the United States; also, that the rule in relation to mandamus must be made absolute, the prosecution remanded to the state court, and the custody of the accused surrendered to the state authorities.

*It is so ordered.*