**COMMONWEALTH OF VIRGINIA,**
Appellee,

v.

**Leah B. MORRIS, Hollis B. Morris, Herman Trent and Frank Brown,**
Appellants.

**No. 9587.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 11, 1965.

Decided Jan. 21, 1966.

Sobeloff and J. Spencer Bell, Circuit Judges, dissented.

S. W. Tucker, Richmond, Va. and Anthony G. Amsterdam, Washington, D. C. (Henry L. Marsh, III, Richmond, Va., on brief), for appellants.

J. Segar Gravatt, Special Counsel for the Commonwealth of Virginia (Thomas Stark, III, Commonwealth's Attorney of Amelia County, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF, BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges, sitting en banc.

HAYNSWORTH, Chief Judge:

The defendants, charged in the state court with assault and battery upon two white men [1] sought to remove their cases under Title 28 U.S.C.A. § 1443(1). The sole ground is a claim of jury discrimination with which we dealt in Commonwealth of Virginia v. Wallace, 4 Cir., 357 F.2d 105, decided this day.

For the reasons there stated, remand of these cases to the state court was proper.

Affirmed.

---

1. The incident had no other racial connotation.

SOBELOFF and J. SPENCER BELL, Circuit Judges (dissenting):

In their petition for removal, these Negro appellants state that while travelling with friends to a wedding in Amelia County, Virginia, their car was forced to stop because the road was blocked by another vehicle, operated by two white men. Thinking that these persons might be in some difficulty, the appellants offered assistance. The white men became "vile and belligerent" and one of them struck Mrs. Morris with a hoe, breaking her arm. The following day the Negroes were arrested, charged with assault and battery, and convicted by the Amelia County court.

After docketing an appeal for a trial *de novo* in the Circuit Court for Amelia County, petitioners removed their cases to the United States District Court for the Western District of Virginia under 28 U.S.C.A. § 1443, on the ground that due to the systematic exclusion of Negroes from juries in Amelia County, they would be unable to receive a fair trial as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the Constitution. The District Court remanded, quoting from the District Court's opinion in the case of Commonwealth v. Wallace, 357 F.2d 105, decided on appeal by our court today in No. 9462. The authorities relied on were Com. of Kentucky v. Powers, 201 U.S. 1, 26 S.Ct. 387, 50 L.Ed. 633 (1906), and Virginia v. Rives, 100 U.S. 313, 25 L.Ed. 667 (1879), in which removal was refused because the asserted denial of equal rights did not appear *on the face* of a state *statute*.

Here, unlike Baines v. City of Danville, 4 Cir., 357 F.2d 756, and Commonwealth v. Wallace, No. 9462, 4 Cir., 357 F.2d 105, the defendants made no allegations that these and other arrests and pending prosecutions were part of a program to suppress the equal civil rights of the petitioners and the entire Negro community. Yet the habitual exclusion of Negroes from juries which try members of that race is an equally effective means of denying them equality before the law. In *Baines* and *Wallace* we said that if the petitioners could establish in advance of their trials that by the unconstitutional application of valid state laws, through the practice of a policy of discrimination, they would be unable to enforce their equal civil rights at trial, they were entitled to have their cases heard in the federal forum. The question here is whether the plaintiffs are entitled to have their cases removed under section 1443, in the absence of allegations, as were present in *Baines*, of a design to suppress the Negro minority by wholesale arrests and prosecutions, if there nevertheless appears a strong likelihood that the appellants will be denied equal civil rights by reason of the prevailing systematic practice of excluding Negroes from Amelia County juries.

Concededly, the doctrine of *Rives-Powers* suggests a negative answer. But the doctrine of these cases is the fruit of a misunderstanding of the basic requirement for removability as expounded in Strauder v. State of West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1879), where the Court emphasized that "inability to enforce equal rights" must appear in advance of trial. Evidence of this inability was there found in the existence of a state statute which was unconstitutional on its face; but later cases transmuted this particular application into a limitation on the principle itself, holding that a statute invalid on its face was the *only* evidence by which "inability to enforce" could be shown.

In any event, Congress has recently plainly indicated its expectation that the appellate courts shall interpret the removal statute in accord with its original meaning and restore life to its plain language.[1] The time has come for a frank

1. See 110 Cong.Rec. 6955 (1964) (remarks of Senator Dodd, floor manager of section 901 of the 1964 Civil Rights Act, allowing appeal of remand orders); 110 Cong.Rec. 2770 (1964) (remarks of Rep. Kastenmeir, manager of section 901 in the House).

recognition that the *Rives-Powers* restrictions on removability are justified neither by the language of the statute nor by its legislative history.[2]

We would hold these cases removable if appellants can show at a hearing in advance of their trials that Negroes have been consistently and systematically excluded from juries in Amelia County for many years, and that there is a strong probability that they will be excluded at the trial of these cases.

Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), is not to the contrary. As we read the majority opinion in that case it was not meant to retract the Court's oft repeated holdings condemning racial exclusion from juries.[3] It merely concluded upon that record that the Negro defendant had failed to show systematic exclusion of Negroes from jury panels in Talledega County, Alabama. The plain intimation was that if there had been such a showing the conviction could not stand. We do not overlook the fact that the Supreme Court review in *Swain* was on appeal from the state Supreme Court; removal to a federal district court had not been sought in that case. The present appellants did make the required allegations for removal,[4] and they should be afforded an opportunity to prove their allegations. If the proof measures up to the allegations they will indeed have demonstrated before trial, as required by section 1443, their inability to enforce their equal civil right to be tried before a jury lawfully chosen.

2. The debates preceding enactment of the present section 1443 show primary concern with discrimination against Negroes from the unconstitutional *application* of state laws, particularly the so-called "Black Codes." Many of these codes were valid on their face but were employed with great effectiveness to suppress the Negro. See, e. g., Cong.Globe, 39th Cong., 1st Sess. 1123–24 (March 1, 1866) (remarks of Rep. Cook). In the major speech urging passage of the Act over presidential veto, Senator Trumbull pointed out:

> "In some communities in the South a custom prevails by which different punishment is inflicted upon the blacks from that meted out to whites for the same offense." Cong.Globe, 39th Cong., 1st Sess. 1759 (April 4, 1866).

Congress knew that only by permitting Negroes to show discrimination in advance of their trials could there be any assurance that the effect of such customs would be ameliorated.

3. See, e. g., Arnold v. North Carolina, 376 U.S. 773, 84 S.Ct. 1032, 12 L.Ed.2d 77 (1965) ; Norris v. State of Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935).

4. As Justice White was careful to emphasize in the majority opinion in *Swain*:

> "[W]hen the prosecutor in a county, in case after case, whatever the crime and whoever the defendant or victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes *ever* serve on petit juries, the Fourteenth Amendment claim takes on added significance. Cf. Yick Wo v. Hopkins, 118 U.S. 356, [6 S.Ct. 1064, 30 L.Ed. 220]. In these circumstances, giving even the widest leeway to the operation of irrational but trial-related suspicions and antagonisms, it would appear that the purpose of the peremptory challenge are being perverted. If the State has not seen fit to leave a single Negro on any jury in a criminal case, the presumption protecting the prosecutor may well be overcome." Swain v. State of Alabama, 380 U.S. at 223–224, 85 S.Ct. at 837–838 (Emphasis added.).

Here, appellants allege that "seldom, *if ever*," have Negroes served on Amelia County juries, and if this contention is proven, they will clearly be entitled to relief under *Swain*.