Leo **HEYMANN** and A. Lester **Sarpy**

v.

**STATE OF LOUISIANA.**

Crim. A. No. 30594.

United States District Court
E. D. Louisiana,
New Orleans Division.

May 26, 1967.

Edgar Corey, New Orleans, La., Guy Johnson, Racivitch, Johnson, Wegmann & Mouledoux, New Orleans, La., for petitioner.

James C. Garrison, Dist. Atty., James L. Alcock, Julian R. Murry, Jr., Asst. Dist. Attys., New Orleans, La., for State of Louisiana.

HEEBE, District Judge.

The two petitioners were indicted on March 3, 1966, by the Grand Jury for the Parish of Orleans for the crime of theft. The prosecution was removed by these petitioners from the Criminal District Court, Parish of Orleans, State of Louisiana, to this Court under the provisions of 28 U.S.C.A. § 1443(1) and the first clause of § 1443(2). The State of Louisiana moved for an order remanding the case to the state court on the ground that removal is not authorized by § 1443(1) or (2).

Under 28 U.S.C.A. § 1447(c) the Court must remand a case if it appears

at any time prior to final judgment that the case was removed improvidently and without jurisdiction, and in such a case may order the payment of costs by the removing party. On a motion to remand, the removing party bears the burden of proving that removal was proper and that the court has jurisdiction. Carson v. Dunham, 121 U.S. 421, 7 S.Ct. 1030, 30 L.Ed. 992 (1887); 1 Barron & Holtzoff § 109, n. 45. Jurisdiction being alleged by petitioners here to lie under § 1443, whether or not removal is authorized by that section is the sole question before the Court. Section 1443 states:

"Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States * * *:

"(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States * * *;

"(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."

With respect to petitioners' contention that removal is authorized under the first phrase of § 1443(2), we need only note that there is no allegation by petitioners that they were acting in the capacity of federal agents or officers, or for such agents or officers at the time of the alleged theft. Removal is therefore not authorized under that portion of § 1443(2), as interpreted by City of Greenwood, Miss. v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966).[1]

Petitioners can support removal under § 1443(1) only by showing both (1) that the right upon which they rely is a "right under any law providing for * * * equal civil rights" and (2) that they are "denied or cannot enforce" that right in the courts of Louisiana. State of Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966). The petitioners have not satisfied either requirement—not as a matter of fact, but as a matter of law.

Turning to their removal petition, we find that petitioners have alleged the following denials of rights:

1. Petitioners were indicted by a grand jury improperly constituted because of systematic exclusion of daily wage earners (Count 4 of the petition);

2. Petitioners were forced to incriminate themselves before the grand jury (Count 7 of the petition);

3. The trial judge improperly denied the petitioners' motions for bills of particulars (Count 9);

4. Petitioners are charged with an act which, under the law of Louisiana, is not a crime;

5. That all of the above "denials" of rights have been perpetrated upon these petitioners solely because they are in the finance business and that the authorities in the State of Louisiana are thereby practicing "obvious discrimination against petitioners as a class," that class presumably consisting of all those in the finance business.

It should be noted that the petitioners, in their memorandum in advance of the hearing and in their arguments at the hearing of this motion to remand, concentrated solely on the first alleged denial of right, that is, the improperly constituted grand jury, and the petitioners seem to have abandoned their last four allegations. A thorough study of the *Rachel* and *Peacock* cases bears out the appropriateness of this approach. Peti-

[1]. The Court stated simply that "* * * the second subsection of § 1443 confers a privilege of removal only upon federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights." 384 U.S. at 824, 86 S.Ct. at 1810.

tioners' opening statement in their memorandum in opposition to this motion to remand thus states as follows:

"With certain exceptions as noted below the memorandum submitted by the state does present a fairly accurate picture of what the Supreme Court of the United States has recently declared in the *Rachel* and *Peacock* cases as to the limited scope of the present removal statute. The state has, however, avoided almost entirely the main point in our present claim for removal here, namely, the prejudicial effects to petitioners of the invalid indictment referred to in ¶¶ 4 and 5 of our petition for removal [in which the petitioners alleged improper constitution of the grand jury]."

The right to a properly composed grand jury, as asserted by the petitioners here, is simply not a right embodied in "any law providing for * * * equal civil rights" as the latter phrase is used in § 1443(1) and interpreted by the *Greenwood* and *Rachel* decisions. The phrase requires that the rights asserted be not only "equal rights," but also that they be embodied in a certain type of law. The Supreme Court stated in the *Rachel* case that

"In spite of the potential breadth of the phrase 'any law providing for * * * equal civil rights,' it seems clear that in enacting [the predecessor of § 1443] Congress intended in that phrase only to include *laws comparable in nature to the Civil Rights Act of 1866.*" 384 U.S. 780, 789–790, 86 S.Ct. 1783, 1789.

We are convinced that if the Civil Rights Act of 1866, or "laws comparable to it," are to be the only laws under which removal can be had under § 1443(1), then the right petitioners assert here will not support removal. Petitioners claim that the rights they were allegedly denied emanate not only from the broad constitutional guarantees of the Fourteenth Amendment, but also from the provisions of a Louisiana statute relating to the qualifications of jurors, LSA–R.S. 15:172,[2] and also from a federal statute of, in the petitioners' words, "ancient vintage," 42 U.S.C.A. § 1981.

None of these provisions are "comparable in nature to the Civil Rights Act of 1866." The constitutional provisions embodied in the Fourteenth Amendment cannot meet that standard, nor can the state law relied on by petitioners here. Certainly one of the basic requisites for a law to fit the comparison with the Civil Rights Act of 1866 is that it be a federal statute. The discussion of the history of the removal statute in *Rachel* makes that quite clear. 384 U.S. at 791, 792, 86 S.Ct. 1783. Moreover, the petitioners' reliance on the Louisiana statute relating to the drawing of juries must be recognized as an attempt to bypass the most basic requirements of federal question jurisdiction. Reliance on a right under a state law as a basis for removal jurisdiction would make this case one "arising under" a state law and not a federal law, and under the Constitution there could be no federal question jurisdiction.[3]

Nor do we think that the federal statute contained in 42 U.S.C.A. § 1981 meets the test of comparison with the 1866 Act. It provides for no specific civil rights. *Rachel* states that

"On the basis of the historical material that is available, we conclude that the phrase 'any law providing for * * * equal civil rights' must be construed to mean any law providing for *specific*

---

2. R.S. 15:172 contained the provision that, in the selection of jurors (both grand and petit) "there shall be no distinction made on account of race, color or previous condition of servitude." Section 172 has now been replaced by Article 401 of the Louisiana Code of Criminal Procedure, from which the quoted provision has been deleted. See LSA–C.Cr. P. Art. 401 comment (e).

3. Of course, the possible federal jurisdictional basis of the Fourteenth Amendment itself would still exist, but Congress simply has not granted removal jurisdiction of state criminal cases on that basis.

*civil rights* stated in terms of racial equality." (emphasis added)

Section 1981 does not meet that test.

We need not base our holding solely on a consideration of the nature of the particular statutes and Constitutional provisions involved here. It is abundantly clear that this petition must fall for the additional reason that these petitioners are not asserting "equal rights" "under" any of these provisions.

Petitioners seem to argue as follows:

1. The laws on which they rely provide for equality of persons with regard to race.

2. Those equal rights are denied to certain persons.

3. Equal rights under those statutes were denied petitioners; but even if the petitioners' own equal rights under these statutes may not have been denied, the denial of those rights to others has had the effect of depriving petitioners of their own due process rights.

This novel approach is not stated so specifically by the petitioners, but we think it to be a fair summary of the heart of most of their argument and memoranda.

■ It is true that petitioners in their removal petition alleged that the state, using the theft statute to prosecute them for usury, was discriminating against the class of those persons in the finance business. This approach is of course without any merit, and the petitioners seem to have abandoned it entirely. Obviously, the "class" of persons against whom prosecutions for usury will be directed is the "class" of those in the finance business. There is no discrimination in that against any "class" just as there is no discrimination in prosecuting only doctors for malpractice, or prosecuting only government officials for malfeasance in office.

The chief argument of petitioners, however, does undoubtedly raise a more substantial question. The meat of the argument applied to this case is that

1. The law proscribes discrimination in the selection of juries.

2. Daily wage earners were excluded from the grand jury, thus depriving daily wage earners of their rights to equal treatment.

3. Although these petitioners are not daily wage earners, and consequently not discriminated against, still they are entitled to the same jury, composed of the same fair cross section of the community, and including daily wage earners, as are defendants who are daily wage earners.

■ Petitioners seem to have the idea that the lack of the fair cross section on a jury is a deprivation of the equal rights of all those who may come before such a jury. This we emphatically deny.

■ The fair and impartial jury which every accused has the right to expect consists not only of individual members who are unprejudiced, unbiased and able and ready to render a fair verdict, but also calls for a certain composition of the jury; in particular, a composite jury representing a cross section of the community, Labat v. Bennett, 365 F.2d 698 (5th Cir. 1966). It is the latter requirement which petitioners assert has been denied them; but the right to a jury composed of a cross section of the community, as asserted here by these petitioners, is not a right of equal protection, but rather one of due process, and as such cannot support removal under § 1443. Although the distinction itself is not yet perfectly clear, it is quite clear that there *is* a distinction between equal rights and due process rights under § 1443. *Rachel* states unequivocally that

"§ 1443 applies only to rights that are granted in terms of equality and not to the whole gamut of constitutional rights." 384 U.S. at 792, 86 S.Ct. at 1790.

■ An "equal right," or a right to the equal protection of the laws, is not a right to any specific treatment by the state, but is simply the right of individ-

uals to receive from the state the same treatment as the state accords all other individuals. If all citizens receive in the same circumstances the same treatment, then no citizen is denied his right to the equal protection of the laws, although all citizens might be receiving unfair treatment. When *all* are treated unfairly, no one is treated unequally. It is only to rights to be treated equally, or "equal rights," that § 1443(1) applies. The Supreme Court indicated long before *Rachel* that this distinction can, in fact, be made between rights under the equal protection clause of the Fourteenth Amendment (rights to be treated equally by the state) and rights under the Due Process Clause (rights to be treated fairly).

> "The equal protection of the laws is a more explicit safeguard of prohibited unfairness than 'due process of law,' and, therefore, we do not imply that the two are always interchangeable phrases." Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954).

In *Bolling* the Court went on to state that unequal treatment may be "so unjustifiable as to be violative of due process." Ibid. But the statement serves to indicate that inequality may amount to unfairness, not to imply that unfairness—or violations of due process—is synonymous with inequality. *Rachel* defined the distinction as follows:

> "When the removal statute speaks of 'any law providing for equal rights,' it refers to those laws that are couched in terms of equality, such as the historic and the recent equal rights statutes, as distinguished from laws, of which the due process clause and 42 U.S.C. § 1983 are sufficient examples, that confer equal rights in the sense, vital to our way of life, of bestowing them upon all." 384 U.S. 792, 86 S.Ct. 1790.

██ Petitioners' chief allegation here is that the grand jury which returned the indictment against them, having been drawn in the same manner as the grand jury criticized by the *Labat*

case, supra, has been drawn on the basis of a broad exclusion of "daily wage earners" pursuant to the Louisiana statutes applicable to the drawing of grand juries. The *Labat* case held that such an exclusion of daily wage earners constituted a deficiency in the jury so drawn, such that all accused persons coming before such jury were denied their right to a jury composed of a "cross section of the community." *Labat* went on to discuss the nature of that right. Although the Court stated that "the equal protection and the due process clauses of the Fourteenth Amendment merge in this case," 365 F.2d at 723, the statement does not hold true in this present case. *Labat* made it emphatically clear that a grand jury not composed of a cross section of the community—no matter which class or classes are excluded—results in a deprivation to *all* accused persons indicted by that jury of their right to be tried by a jury "of their peers" composed of a "cross section of the community." That right, then, by the mere fact that all are denied it, is not one of equal protection but of due process. In *Labat*, however, the accused were daily wage earners, and that fact, together with the fact that the class excluded from jury service was that of daily wage earners, introduced the element of discrimination to the case. In the present case, however, the petitioners, although they cite the exclusion of daily wage earners as the basis for the deprivation of their rights, are not themselves daily wage earners. The unequal treatment of daily wage earners cannot be said to amount to unequal treatment of those who are not daily wage earners. This is not to say that petitioners have not been denied their right to a jury composed of a cross section of the community—but the latter right is, as to these petitioners, not one of equal protection but of due process.

Petitioners' quite novel argument at this point seems to be that although they themselves may not have been denied specific rights of equal protection, nevertheless certain daily wage earners have

been denied that right, and because of that denial, the petitioners' right to a jury composed of a fair cross section of the community has consequently been denied.

Accepting, for purposes of argument, the petitioners' contention that daily wage earners as a class were discriminated against in the drawing of this jury, we would fully agree that under the *Labat* holding the petitioners' right to a fair cross section on that jury had been denied. However the denial of that right, even though it arises out of the denial of the equal protection rights of others, does not suffice for removal under § 1443(1). According to *Rachel*, the right relied on for removal must be a "right *under* a law providing for equal civil rights." Certainly a removing petitioner, alleging a denial of equal rights, must be alleging that denial as to himself. There is no other possible interpretation of the *Rachel* and *Greenwood* decisions.

As stated above, the petitioners rely on five alleged denials of rights. We have disposed particularly of their main contention, that of an improper composition of the grand jury which returned their indictment. However, everything we have said with relation to that allegation applies with equal force to the other four. .

▮ Moreover, our decision can be predicated equally well upon the petitioners' failure to bring themselves within the second requirement for removal under the *Rachel* and *Greenwood* decisions. The petitioners have failed to show that they "are denied or cannot enforce" their rights in the courts of Louisiana. As demonstrated more fully in our opinion in Griffin v. State of Louisiana, 269 F.Supp. 32, also rendered today, any petitioner wishing to bring himself within the statutory requirements for removal under § 1443(1), must not merely allege a denial of rights by the courts of the state, but must actually allege facts which, if found to be

true on a hearing of the matter, would furnish the Federal District Court with *a firm prediction that his rights will inevitably be denied by each and every state court.*[4] Petitioners present several arguments that a firm prediction of denial of their rights exists here. The first is that a "firm prediction" of denial of their rights is possible because their rights have in fact already been denied: a defective grand jury has already rendered the indictment against them; petitioners have already been made to incriminate themselves; their. motions for bills of particulars and for change of venue have already been denied by the state court judge in their case.

▮ As we stated in *Griffin*, under the *Rachel* and *Greenwood* decisions there must be a firm prediction that the rights allegedly denied to the petitioner will inevitably be denied by each and every state court. Despite petitioners' allegations that their rights have already been denied by the judge of the Criminal District Court for the Parish of Orleans, this Court, as an unbiased and impartial trier of fact, is in no position, and could be in no position after the most extensive factual hearing in this matter, to make anything like a firm prediction that petitioners' rights will be denied by each and every state court, including the Louisiana Supreme Court. It must be remembered that the court in *Greenwood* and *Rachel* was construing a Congressional statute, not an argument in logic. As *Greenwood* states:

> "It is not enough to support removal under § 1443(1) to allege or show that the defendants' federal equal civil rights have been illegally and corruptly denied by state administrative officials in advance of trial, that the charges against the defendant are false, or that the defendant is unable to obtain a fair trial in a particular state court." 384 U.S. 808, 827, 86 S.Ct. 1800, 1812.

The firm prediction required can only be made, as *Greenwood* states,

4. See 13 Loyola L.Rev. 57, 58–59 (1967).

"In the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court." 384 U.S. at 828, 86 S.Ct. at 1812.

The firm prediction can be made only where the prosecution itself is defective because of its conflict with an explicit federal right.[5]

Petitioners' final argument might be stated as follows:

1. The *Labat* case has explicitly held that the method used in selecting grand juries in Orleans Parish is unconstitutional in violation of the right of defendants to be tried by a jury consisting of a cross section of the community;

2. Any indictment handed down by such a jury must be considered inherently defective at its inception; and

3. Since the grand jury involved here was chosen by the same method as the grand jury censored in the *Labat* case, the indictment handed down by that jury against these petitioners must be considered inherently defective, and therefore the firm prediction discussed in the *Rachel* and *Greenwood* decisions can be made that any proceeding under that indictment in any state court would inevitably deny the rights of these petitioners.

The force of this argument has been dissolved, we believe, by our previous discussion concerning the nature of the rights and of the particular statutes involved here. However, we feel that this argument falls also by reason of its failure to fit even the second requirement of *Rachel,* that is, that the alleged rights must be firmly predicted to be denied by each and every state court.

■■■■ As we have indicated elsewhere, the defectiveness of a prosecution in order to support the firm prediction required by *Rachel* must be of a somewhat "obvious" character.[6] Were we confronted with a case such as *Labat* actually condemning as defective the particular grand jury which returned the indictment in this case, we might well be moved by petitioners' argument. The *Labat* case itself did not condemn this particular grand jury. The *Labat* decision—and any decision for that matter—is not binding on this Court as to its determination of factual issues where different parties are involved. Of course, we need not be "bound" by *Labat* in order to find in that case a basis for a finding that this prosecution of these petitioners is inherently and obviously defective. But here, not only are different parties involved, but a different grand jury, and one drawn long after the one condemned in *Labat*. Petitioners seem to attach no significance at all to the fact that the *Labat* holding was simply that "In *1953* and for five years before in the Parish of Orleans, the method of selecting juries failed to meet Constitutional standards * * *." We are unable now, and we would be unable after the most extensive of factual hearings, to·predict with the firmness required by *Rachel* that this indictment of these petitioners is inherently and obviously defective, and that a grand jury drawn in October 1966 was improperly drawn, merely on the basis of a case which involved a different grand jury and one which expired in March 1951.

For the foregoing reasons, we find that 28 U.S.C.A. § 1443 does not authorize removal of this state criminal prosecution to this Court, and accordingly this case must be remanded to the Criminal District Court for the Parish of Orleans, State of Louisiana, for proceedings under the laws of that state and the rules of that court.

Pursuant to the foregoing opinion and pursuant to 28 U.S C.A. § 1447(c), the petitioners are hereby ordered and required to pay the just costs occasioned by this removal.

5. See 13 Loyola L.Rev., 57, 64 (1967).

6. 13 Loyola L.Rev. 57, 65 n. 15 (1967).