**COMMONWEALTH OF PENNSYLVANIA**

v.

**Paul LEONARD, Lawrence Y. Lingard, Jerry B. Williams, Frederick T. Wims, Francis Rolls, Thomas E. Bell, Defendants.**

**Civ. A. No. 70–597.**

United States District Court,
W. D. Pennsylvania.
July 16, 1970.

216

Harry F. Swanger, Pittsburgh, Pa., for defendants.

## OPINION

GOURLEY, Senior District Judge.

This is a Petition seeking the removal of a criminal proceeding pending in the Criminal Division of the Court of Common Pleas of Allegheny County, Pennsylvania, pursuant to § 1443 of Title 28 of the United States Code. In the State Court, a Grand Jury has indicted each of the petitioners upon a charge of inciting to riot, stemming from his activities on August 26, 1969 during public demonstrations in support of the Black Construction Coalition's attempt to secure equal employment opportunities in the construction industry. This is the third of a series of similar petitions seeking the removal of criminal prosecutions against individuals arising out of these public demonstrations, the other such

petitions having been filed at Civil Actions 70–556, 313 F.Supp. 1159 and 70–557.

Upon receipt and review of the Petition, the service and filing of which effectuates removal under the provisions of § 1446(e) of Title 28 of the United States Code, the Court entered an order on June 4, 1970, directing that a responsive pleading be filed, summoning the relevant state records and calling for briefs and argument upon the legal sufficiency of the Petition. The District Attorney of Allegheny County filed a motion to dismiss on June 9, 1970, which will be treated as a motion to remand this proceeding to the State Court. A hearing has been conducted by the Court, and, upon review of the Petition and state records and consideration of the oral arguments and briefs of counsel and the law applicable herein, the Court is of the opinion that the instant criminal proceedings must be remanded to state jurisdiction.

The federal statute authorizing the removal to a federal district court of state civil or criminal prosecutions is 28 U.S.C. § 1443, which provides as follows:

"Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."

Reviewing the history of this removal provision in the two companion cases of Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1965) and City of Greenwood v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1965), the Supreme Court of the United States has clearly indicated that the scope of removal under the provision is highly circumscribed and permits of removal only in specific and well-defined circumstances.

As construed by the Supreme Court in Greenwood v. Peacock, *supra*, at 821, 86 S.Ct. 1800, sub-section (2) of § 1443 permits of removal only by federal officers and those acting under them. It is not alleged that petitioners herein were or are either federal officers or persons acting under federal officers and, accordingly, if petitioners are entitled to removal, it could only be pursuant to sub-section (1) of § 1443.

Sub-section (1) affords a right of removal to any person who is denied or cannot enforce in the courts of a state "a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof." Construing this language in the case of Georgia v. Rachel, *supra*, the Supreme Court stated at 384 U.S. at p. 792, 86 S.Ct. at 1790:

"On the basis of the historical material that is available we conclude that the phrase 'any law providing * * * equal civil rights' must be construed to mean any law providing for specific civil rights stated in terms of racial equality. Thus, the defendants' broad contentions under the First Amendment and the Due Process Clause of the Fourteenth Amendment cannot support a valid claim for removal under § 1443, because the guarantees of those clauses are phrased in terms of general application available to all persons or citizens, rather than in the specific language of racial equality that § 1443 demands. As the Court of Appeals for the Second Circuit has concluded, § 1443 'applies only to rights that are granted in terms of equality and not to the whole gamut of constitutional rights * * *.' 'When the removal

statute speaks of "any law providing for equal rights," it refers to those laws that are couched in terms of equality, such as the historic and the recent equal rights statutes, as distinguished from laws, of which the due process clause and 42 U.S.C. § 1983 are sufficient examples, that confer equal rights in the sense, vital to our way of life, of bestowing them upon all.' People of State of New York v. Galamison, 2 Cir., 342 F.2d 255, 269, 271. See also Gibson v. Mississippi, 162 U.S. 565, 585–586, 16 S.Ct. 904, 905, 906, 40 L.Ed. 1075; Com. of Kentucky v. Powers, 201 U.S. 1, 39–40, 26 S.Ct. 387, 399, 400, 50 L.Ed. 633; City of Greenwood v. Peacock, 384 U. S. p. 825, 86 S.Ct. 1811, 16 L.Ed.2d 955."

Thus, to prevail here, petitioners must demonstrate that they are denied or cannot enforce in their criminal proceedings in the Court of Common Pleas of Allegheny County a right afforded by federal law, the terms of which grant specific civil rights stated in terms of racial equality.

Counsel for petitioners argues that they have been arrested and indicted for engaging in activity which is protected by §§ 601 and 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000d and 42 U.S.C. § 2000e–2(a) (c) & (d). Section 601 prohibits exclusion from participation in, denial of benefits of, or discrimination under federally assisted programs on the ground of race, color or national origin. Section 703 protects the equal rights of all individuals, regardless of race, color, religion, sex or national origin, to employment and the participation in training or apprenticeship programs. However, the instant Petition does not allege that petitioners, at the times of their arrests, were seeking employment or to participate in a training or an apprenticeship program, federally funded or otherwise.

Paragraph 5 is the essential allegation of the Petition, and it reads as follows:

"5. Petitioners were arrested on Tuesday, August 26, 1969, at approximately 10:00 a. m., by police officers of the City of Pittsburgh, *while lawfully and peaceably marching* solely for the purpose of enforcing the affirmatively granted federal equal civil rights set forth above and secured, guaranteed and protected by the Constitution and laws of the United States, to wit the CIVIL RIGHTS ACT and in particular Title 42 United States Code, Sections 1981, 1983, 2000d, and 2000e–2(a) (c) & (d), and the 1st and 14th Amendments of the U. S. Constitution." (Emphasis supplied.)

At the hearing, counsel for the respective parties indicated that the aforementioned march commenced at the Three Rivers Stadium located on the North Side section of the City of Pittsburgh and proceeded across the Manchester Bridge, through the downtown area and toward the United States Steel Building which is under construction at Seventh and Grant Streets.

■■ Accepting as true the allegation that, while participating in this march, petitioners were acting in a lawful and peaceable manner, nevertheless, the activity of demonstrating upon public streets in support of the principle of equal employment opportunities was not in itself protected by §§ 601 and 703 of the Civil Rights Act of 1964. If petitioners were marching in a lawful and peaceful manner, their conduct arguably was protected by the First Amendment to the Constitution. While this would be a valid defense to petitioners' prosecutions in the State Court, nevertheless, under the above-quoted language in the case of Georgia v. Rachel, *supra,* it would not afford them a valid basis for removal of the criminal prosecutions to this Court. The First Amendment affords a right of assembly and a right of freedom of expression to all citizens but does not provide for equal rights stated in terms of racial equality.

The instant case is akin to that of Greenwood v. Peacock, *supra,* wherein

twenty-nine members of a civil rights group engaged in a drive to encourage negro voter registration in Leflore County, Mississippi, were subjected to State criminal charges including obstructing public streets, assault, interfering with an officer in the performance of his duty, disturbing the peace, creating a disturbance in a public place, inciting to riot, parading without a permit, assault and battery by biting a police officer, contributing to the delinquency of a minor, operating a motor vehicle with improper license tags, reckless driving, profanity and use of vulgar language. Recognizing initially, 384 U. S. at p. 825, 86 S.Ct. 1800, that the First Amendment right of freedom of expression is not a right arising under a law providing for "equal civil rights" within the meaning of § 1443(1), the Supreme Court went on to say at pps. 826–827, 86 S.Ct. at p. 1812:

> "First, no federal law confers an absolute right on private citizens—on civil rights advocates, on Negroes, or on anybody else—to obstruct a public street, to contribute to the delinquency of a minor, to drive an automobile without a license, or to bite a policeman. Second, no federal law confers immunity from state prosecution on such charges."

Like the petitioners in Greenwood v. Peacock, *supra,* petitioners herein are charged with conduct which is unprotected by federal law.

As a second and independent basis for removal, petitioners have asserted in their brief and upon oral argument, although not in their Petition, that the Grand Jury by which they have been indicted and the petit jury by which they will be tried was and will be unrepresentative of a cross-section of the community, thereby violating the Equal Protection Clause of the Fourteenth Amendment. Specifically challenged as unconstitutional on its face, and as applied, is § 6 of the Act of May 11, 1925, P.L. 561, 17 P.S. § 1276, which provides that the names of prospective jurors shall be selected from lists of persons assessed for purposes of taxation. By limiting the opportunity for jury service to those who are "taxable," this statutory provision, it is asserted, discriminates against the poor, the young, and the unemployed.[1]

On its face, § 6 of the Act of May 11, 1925 excludes from selection for jury service all persons who are not within the class of "taxables." The constitutionality of this discrimination merits serious consideration. In the case of Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L. Ed.2d 169 (1966), the Supreme Court of the United States invalidated the Virginia poll tax, payment of which was a prerequisite to voting. In so deciding, the Supreme Court stated that wealth is not a proper criteria for determining whether one can intelligently participate in the electoral process. Also, in Carter v. Jury Commission, 396 U.S. 320, 90 S. Ct. 518, 24 L.Ed.2d 549 (1969), the Supreme Court indicated that states may confine the selection of jurors to citizens, persons meeting specified qualifications of age and educational attainment, and to those possessing good intelligence, sound judgment, and fair character. The question may be asked as to whether taxability in any way relates to

---

1. Petitioners' brief incorporates a brief filed in the State Court on behalf of certain criminal defendants not party to this removal. In the latter brief, the defendants contended that the manner in which the Jury Commission implements the Act of May 11, 1925 results specifically in the exclusion of black persons from grand and petit juries. The application by State administrative officials of a statute not racially discriminatory on its face in a manner which is racially discriminatory does not afford a basis for removal. Greenwood v. Peacock, *supra,* at 827–828, 86 S.Ct. 1800; Kentucky v. Powers, 201 U.S. 1, 29–30, 26 S.Ct. 387, 50 L.Ed. 633 (1906) ; Hill v. Comm. of Pa., 183 F.Supp. 126, 128 (W.D.Pa. 1960).

the aforementioned criteria deemed reasonable for the selection of jurors.

■■ Nevertheless, this challenge to the constitutionality of § 6 of the Act of May 11, 1925 does not afford a basis for removal herein. Only those violations of the Equal Protection Clause of the Fourteenth Amendment which involve a discrimination based on race may afford a basis for removal under the limited scope of 28 U.S.C. § 1443(1). Peacock v. City of Greenwood, 347 F.2d 679, 682 (5th Cir. 1965), rev'd on other grounds, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966); Chestnut v. People of State of New York, 370 F.2d 1, 3–4 (2nd Cir. 1966), cert. denied, 386 U.S. 1009, 87 S. Ct. 1355, 18 L.Ed.2d 439 (1967). Section 6 of the Act of May 11, 1925 does not, on its face, discriminate in terms of race, and, therefore, the challenge to the Statute does not afford a proper basis for removal.

The case of Chestnut v. People of State of New York, *supra*, is not dissimilar. There, eight individuals with criminal prosecutions pending against them in the State of New York sought a removal of the proceedings based upon a challenge to § 596 of the New York Judiciary Law, McKinney's Consol. Laws, c. 30, which required, inter alia, that a grand juror be "the owner * * * of real or personal property of the value of $250.00." While conceding that a serious constitutional question was presented by the New York Statute, the Court in *Chestnut, supra,* nevertheless determined that the Statute, on its face, did not discriminate in terms of race, and therefore concluded that the challenge to the same could not afford a proper basis for removal. In affirming the remand of the case to the Criminal Court of the City of New York, the Court of Appeals for the Second Circuit stated:

"We believe that the alleged illegality of New York Grand Jury can be amply litigated in the state courts. It would be unseemly, therefore, for us to prejudge our brethren of the state courts and conclude that appellants will be foreclosed from enforcing their rights in a state forum. The healthy functioning of our federal sustem is fostered when the administration of the state's criminal laws and the determination of their validity is left in the first instance to the courts of the state." 370 F.2d at p. 6.

■ Petitioners' counsel advised at oral argument that the Criminal Division of the Court of Common Pleas of Allegheny County, Pennsylvania, is presently considering the constitutional challenge to § 6 of the Act of May 11, 1925 on the grounds asserted herein in three other criminal proceedings. No adjudication has yet been rendered upon challenges to the array of Grand Jurors in those criminal cases. However, it is clear that a procedure exists by which petitioners may assert the same challenge to the constitutionality of § 6 in their own state criminal proceedings. Although they already have been indicted, they may move to quash the indictments on the ground that the Grand Jury returning the same was unconstitutionally constituted. Also, they may challenge the petit jury by a challenge to the array of jurors at the time of trial. Because these opportunities yet remain open to petitioners [2], there is no basis for a firm prediction that petitioners will be "denied or cannot enforce" their federal rights to indictment by a Grand Jury and trial by a petit jury which are representative of a cross section of the community. Georgia v. Rachel, *supra*; State of Georgia v. Birdsong, et al., 428

2. It was represented at oral argument that petitioners do not contend that they themselves are members of the class of "nontaxables" excluded from jury service. A question, therefore, exists as to petitioners' standing to raise the issue of the composition of the grand and petit juries. See Heymann v. State of Louisiana, 269 F.Supp. 36 (E.D.La.1967).

F.2d 1223 (5th Cir. 1970), decided June 9, 1970.

At oral argument, counsel for petitioners argued that a remand of the proceedings should not be granted without affording petitioners an evidentiary hearing upon the allegations in support of removal. The Motion filed by the District Attorney places in issue the legal sufficiency of the allegations of the Petition for Removal. Therefore, the same criterion applicable to a motion to dismiss may be applied in determining whether the instant proceeding must be remanded to the state jurisdiction. In 2A Moore's Federal Practice, para. 12.-08, pps. 2271–74, the criterion for determining whether to dismiss a complaint for want of legal sufficiency is stated as follows:

"* * * (A) complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*

In the instant proceeding, it does appear to a certainty that petitioners are not entitled to removal of their state criminal prosecutions under any state of facts which could be proved in support of the claim for removal. Also, the defect is not one lending itself to cure by amendment.

While removal is to be denied and the instant criminal proceedings remanded to the state jurisdiction, petitioners are not precluded from raising the constitutional issues asserted here in the state criminal proceedings. And, should the state courts fail to afford due recognition to the federal constitutional rights of the petitioners, federal review may still be obtained through ultimate appeal to the Supreme Court of the United States or by application in the federal courts for writ of habeas corpus, once state remedies have been exhausted.

An appropriate Order is entered.